## MALAT ET UX. *v.* RIDDELL, DISTRICT DIRECTOR OF INTERNAL REVENUE.

No. 487.   Argued March 3, 1966.—Decided March 21, 1966.

*George T. Altman* argued the cause and filed briefs for petitioners.

*Jack S. Levin* argued the cause for respondent.   With him on the brief were *Solicitor General Marshall, Acting Assistant Attorney General Roberts, Melva M. Graney* and *Carolyn R. Just.*

PER CURIAM.

Petitioner[1] was a participant in a joint venture which acquired a 45-acre parcel of land, the intended use for which is somewhat in dispute.   Petitioner contends that the venturers' intention was to develop and operate an apartment project on the land; the respondent's posi-

---

[1] The taxpayer and his wife who filed a joint return are the petitioners, but for simplicity are referred to throughout as "petitioner."

tion is that there was a "dual purpose" of developing the property for rental purposes or selling, whichever proved to be the more profitable. In any event, difficulties in obtaining the necessary financing were encountered, and the interior lots of the tract were subdivided and sold. The profit from those sales was reported and taxed as ordinary income.

The joint venturers continued to explore the possibility of commercially developing the remaining exterior parcels. Additional frustrations in the form of zoning restrictions were encountered. These difficulties persuaded petitioner and another of the joint venturers of the desirability of terminating the venture; accordingly, they sold out their interests in the remaining property. Petitioner contends that he is entitled to treat the profits from this last sale as capital gains; the respondent takes the position that this was "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," [2] and thus subject to taxation as ordinary income.

The District Court made the following finding:

"The members of [the joint venture], as of the date the 44.901 acres were acquired, intended either to sell the property or develop it for rental, depending upon which course appeared to be most profitable. The venturers realized that they had made a good purchase price-wise and, if they were unable to obtain acceptable construction financing or rezoning . . . which would be prerequisite to commercial development, they would sell the property

---

[2] Internal Revenue Code of 1954, § 1221 (1), 26 U. S. C. § 1221 (1):

"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) . . . property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

in bulk so they wouldn't get hurt. The purpose of either selling or developing the property continued during the period in which .[the joint venture] held the property."

The District Court ruled that petitioner had failed to establish that the property was not held *primarily* for sale to customers in the ordinary course of business, and thus rejected petitioner's claim to capital gain treatment for the profits derived from the property's resale. The Court of Appeals affirmed, 347 F. 2d 23. We granted certiorari (382 U. S. 900) to resolve a conflict among the courts of appeals [3] with regard to the meaning of the term "primarily" as it is used in § 1221 (1) of the Internal Revenue Code of 1954.

The statute denies capital gain treatment to profits reaped from the sale of "property held by the taxpayer *primarily* for sale to customers in the ordinary course of his trade or business." (Emphasis added.) The respondent urges upon us a construction of "primarily" as meaning that a purpose may be "primary" if it is a "substantial" one.

As we have often said, "the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." *Crane* v. *Commissioner*, 331 U. S. 1, 6. And see *Hanover Bank* v. *Commissioner*, 369 U. S. 672, 687–688; *Commissioner* v. *Korell*, 339 U. S. 619, 627–628. Departure from a literal reading of statutory language may, on occasion, be indicated by relevant internal evidence of the statute itself

[3] Compare *Rollingwood Corp.* v. *Commissioner*, 190 F. 2d 263, 266 (C. A. 9th Cir.); *American Can Co.* v. *Commissioner*, 317 F. 2d 604, 605 (C. A. 2d Cir.), with *United States* v. *Bennett*, 186 F. 2d 407, 410–411 (C. A. 5th Cir.); *Municipal Bond Corp.* v. *Commissioner*, 341 F. 2d 683, 688–689 (C. A. 8th Cir.). Cf. *Recordak Corp.* v. *United States*, 163 Ct. Cl. 294, 300–301, 325 F. 2d 460, 463–464.

and necessary in order to effect the legislative purpose. See, *e. g., Board of Governors* v. *Agnew,* 329 U. S. 441, 446–448. But this is not such an occasion. The purpose of the statutory provision with which we deal is to differentiate between the "profits and losses arising from the everyday operation of a business" on the one hand (*Corn Products Co.* v. *Commissioner,* 350 U. S. 46, 52) and "the realization of appreciation in value accrued over a substantial period of time" on the other. (*Commissioner* v. *Gillette Motor Co.,* 364 U. S. 130, 134.) A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in § 1221 (1), "primarily" means "of first importance" or "principally."

Since the courts below applied an incorrect legal standard, we do not consider whether the result would be supportable on the facts of this case had the correct one been applied. We believe, moreover, that the appropriate disposition is to remand the case to the District Court for fresh fact-findings, addressed to the statute as we have now construed it.

*Vacated and remanded.*

MR. JUSTICE BLACK would affirm the judgments of the District Court and the Court of Appeals.

MR. JUSTICE WHITE took no part in the decision of this case.