William A. SCHEUBER and Hildegard Scheuber, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15833.

United States Court of Appeals Seventh Circuit.

Feb. 2, 1967.

Thomas J. Donnelly, Jr., Samuel J. Recht, John A. Hazelwood, Milwaukee, Wis., Brady, Tyrrell & Bruce, Milwaukee, Wis., of counsel, for petitioners.

Mitchell Rogovin, Marco S. Sonnenschein, Department of Justice, Washington, D. C., Lee A. Jackson, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and FAIRCHILD, Circuit Judges.

KNOCH, Circuit Judge.

The petitioners, William A. and Hildegard Scheuber, seek review and reversal of the Tax Court's ruling in favor of the Commissioner of Internal Revenue, respondent herein, that two parcels of real estate were held by the petitioners primarily for sale to customers in the ordinary course of business.

The evidentiary facts are undisputed. The petitioners are husband and wife who file joint income tax returns.

Mr. Scheuber has been a licensed real estate broker since 1921 and is well known in the Milwaukee, Wisconsin, area as a dealer in real property.

After their marriage in 1935, the Scheubers carried out an investment program whereby Mr. Scheuber held title to the stocks and bonds they acquired and Mrs. Scheuber held title to their real estate. Except for a jointly held residence, all realty was held in Mrs. Scheuber's name and all income from real estate sales was reported as her income. However Mrs. Scheuber never personally engaged in buying and selling real estate but acted on the advice of her husband and through him as her agent. Some of the real estate purchased was bought for resale within a short time. Some was bought with the intent of holding it for long-term appreciation in value.

Some of the past sales were the subject of prior litigation as a result of which some sales were held to be of property held primarily for sale to customers in the ordinary course of business and some as held for investment resulting in capital gains.

One of the two tracts involved in this action was unimproved real estate at 6200 North Hopkins Avenue in Milwaukee, Wisconsin, bought July 7, 1950, for $12,000. Half of it was sold September 3, 1958, to Standard Oil Company for $17,038.63 with a gain of $11,763.35. On November 17, 1959, the other half was sold to a veterans' organization for $15,000 with a gain of $6,910.89.

The property was zoned for local business but was in an undeveloped section where it was anticipated future development would increase its value, as it did. The property was never advertised for sale during the period 1950–1959. Mr. Scheuber was approached by a broker representing the Standard Oil Company, rather than the reverse. Nor was Mr. Scheuber directly responsible for the initial contact with representatives of the veterans' organization.

The second parcel was also unimproved. It was in the block between 74th and 75th Streets on Capitol Drive in Milwaukee. In 1945, two blocks of vacant real estate between 74th and 76th Streets on the south side of Capitol Drive and two adjacent lots (numbered 27 and 28) were bought for $10,000. At the time Mr. Scheuber advised Mrs. Scheuber that this property would provide an annuity for her in her old age because of its expected long-term appreciation in value.

In 1950 representatives of both Standard Oil Company and Wisconsin Independent Oil Company approached Mr. Scheuber regarding purchase of the block between 75th and 76th Streets. Mr. Scheuber accepted an offer of $30,000 from Wisconsin Independent Oil Company.

In 1954 when Mr. Scheuber heard that the zoning of lots 27 and 28 was to be changed from local business to residential, he decided to sell those lots and did

so after advertising in newspapers and by signs on the property.

There were no substantial efforts to sell the block between 74th and 75th Streets. There had been negotiations for a lease and for a sale of one-half of the property but these were not consummated. In each case Mr. Scheuber was approached by the interested parties. After securing a 10-day purchase option for $100,000, the broker for a prospective purchaser learned that the property was wanted for a city library, and in 1959, the property was condemned.

When the property was acquired in 1945, there had been a "for sale" sign on it, which contained the name of the prior owner. The Scheubers did not remove that sign. On three occasions (the Tax Court found four, but the fourth is questionable) during the years 1954–1959, the Scheubers did advertise the condemned property in very small print, two-line newspaper listings, one placed after notice of condemnation.

The Tax Court deprecated the guide lines favorable to the taxpayers, in determining whether these parcels were held for sale or for investment, as being only the result of special circumstances. For example, the Tax Court concluded that advertising and affirmative efforts to sell were unnecessary because a seller's market existed and because Mr. Scheuber was in the business of selling real estate.

The pertinent statute reads:

Internal Revenue Code of 1954:

Sec. 1221. Capital Asset Defined.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

\* \* \*

(26 U.S.C. 1964 ed., Sec. 1221.)

■ In oral argument, in discussing the various guidelines laid down in past cases such as frequency of sales, improvements (or absence of same) to make the property more marketable, length of time the property is held, substantiality of income, purpose of acquisition, extent of advertising, and the like, counsel for the Commissioner asserted that many of these factors help to determine in individual cases not only whether the taxpayer has held the property for sale but also whether the taxpayer is in the real estate business, an element which is conceded in the case before us. Admittedly no single element is conclusive. Frankenstein v. C. I. R., 7 Cir., 1959, 272 F.2d 135. Each case must rest upon its own facts. Mauldin v. C. I. R., 10 Cir., 1952, 195 F.2d 714.

■ The Commissioner argues that no advertising was needed, that customers came to Mr. Scheuber, that there were frequent sales of realty by the Scheubers, and that from the beginning they always intended to sell the property when a satisfactory profit could be realized, and that, for that reason, the lengthy time during which the properties in question were held does not conclusively prove that the properties were not held for sale in the ordinary course of business. The Commissioner concedes that it is possible for a dealer in real estate to hold certain parcels not primarily for sale to customers in the ordinary course of business, but contends that a heavier burden must be sustained by such a dealer in proving that fact.

The taxpayers rely on the recent case of Malat v. Riddell, District Director of Internal Revenue, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). The Malats alleged that they intended to develop

a 45-acre parcel of land and operate an apartment project thereon. The District Director's position was that there was a dual purpose of developing for rental or of selling, whichever proved more profitable. The District Court agreed. Difficulties in financing were encountered. The interior lots were subdivided and sold and the proceeds reported and taxed as ordinary income. Zoning restrictions with respect to the remaining lots led to termination of the venture, and the remaining land was sold with the proceeds reported as capital gains. The District Court held that the taxpayers had failed to establish that the property was not held primarily for sale to customers in the normal course of business with the proceeds to be taxed as ordinary income. The District Court entered judgment for the District Director. The 9th Circuit affirmed. 347 F.2d 23 (1965). The U. S. Supreme Court vacated the judgment holding (383 U.S. page 572, 86 S.Ct. 1030) that the purpose of the statute was to differentiate between the profits and losses arising from every day operation of a business and the realization of appreciation in value accrued over a substantial period of time.

In seeking to distinguish Malat, the Commissioner stresses the existence of a dual purpose there, viewing the Supreme Court's decision as limited to interpreting "primary" purpose, where there is more than one, as that which is first in order of importance. Thus the Commissioner contends that the Scheubers had no dual purpose; that they always intended to sell the parcels some time in the future, and that they have shown no effort to demark or isolate these properties from those in their usual inventory.

We think that this represents a very strained interpretation of Malat and a misapplication of its principles to the facts of this case. The Malats were also dealers in real estate and operated on a much larger scale than the Scheubers. In *Malat* about 107 pieces of unimproved real estate were sold in the taxable year involved. The Commissioner points only to eleven sales and thirteen purchases made by the Scheubers in the several taxable years involved here. The Scheubers held their properties for many times longer periods of time than the Malats. They realized extremely substantial gains over their investments. As a result of the condemnation proceedings, they were ultimately awarded almost $130,000 as the total to be paid for the condemned property. These eventual returns on the amounts initially invested were unrealistically high for items held for resale in day to day operation of a business. As the Tax Court's findings indicate, this real estate was purchased and held for realization of appreciation in value to be accrued over a substantial period of time, with no intensive effort to improve or sell it. It was always intended ultimately to be disposed of to provide the "annuity" of which Mr. Scheuber spoke, but not to be disposed of to customers in the ordinary course of trade.

We conclude that the ultimate finding that these properties were held primarily for sale to customers in the ordinary course of business was clearly erroneous. The judgment of the Tax Court is reversed.

Reversed.