## ELMER A. KRUSE *v.* STATE TAX COMMISSION

John W. Whitty, Coos Bay, Oregon, represented plaintiff.

Ira W. Jones, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for defendant rendered July 12, 1967.

EDWARD H. HOWELL, Judge.

The question before the court in this case is whether certain timber sold in 1960 was a capital asset as defined in ORS 316.408, thereby giving rise to a capital gain, or as the tax commission contends, property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business resulting in ordinary income.

During the time involved the material part of ORS 316.408 (repealed by Or L 1965, ch 410) stated:

"For the purpose of ORS 316.408 to 316.450, 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include:

"* * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

In 1960 the plaintiff and three others, Avery Lasswell, E. G. Whipple and Jim Whipple, were partners in Kruse Lumber Co. – Planer which owned a tract of land and timber called the Brush Creek tract. Plaintiff was also a member of a joint venture called the Tom Folley Timber Company which was formed in 1953. The members of the joint venture were the plaintiff, Harold Woolley, E. G. Whipple and Jim Whipple. The joint venture owned a tract of approximately 6,000 acres of timberland which, with the exception of some small parcels purchased for rights-of-way, was acquired in 1953.

The background of the partnership and the Brush Creek tract will be discussed first. In 1948 plaintiff and his three partners purchased this tract consisting of 5,000 acres of land and timber in Douglas County. Additional purchases were made after 1948 to consolidate their holdings, eliminate access and boundary problems and to permit logging of the area on an orderly basis.

The plaintiff stated that he purchased his interest in the Brush Creek tract as an investment.

In 1949 the partnership acquired a planing mill which, together with the Brush Creek tract, comprised the main physical assets of the partnership. From 1949 to 1958 the plaintiff was the partner responsible for the operation of the planing mill. Jim Whipple was responsible for the timber. The plaintiff participated in policy decisions regarding the Brush Creek tract. The planing mill was sold in 1958. In 1950 the partnership started selling timber from the Brush Creek tract. Except for incidental sales of blown down timber, practically all of the sales from Brush Creek were on an oral basis to Woolley Logging Company, a corporation, and a partnership known as the E. G. Whipple Mill, consisting of E. G. Whipple and Jim S. Whipple.

In March 1959 the partnership entered into a written contract of sale with the E. G. Whipple Mill and the Woolley Logging Company whereby the buyers were to purchase and log not less than five million feet each year during the period covered by the agreement which expired on December 31, 1961. The logs were sold on a per thousand basis and the prices ranged from $5 to $30 per thousand. The buyers could dispose of the logs in any manner they desired

except that the parties orally agreed that the logs would not be sold out of the immediate area. Most of the logs were sold by the buyers to Kruse-Woolley Lumber Company, a partnership consisting of plaintiff, Lasswell and Woolley, which existed between 1950 and 1956. Sales were also made to Smith River Lumber Company and E. G. Whipple Mill. Kruse Lumber Co. – Planer did not advertise for sale, solicit sales, or hire any agents to sell any of the Brush Creek timber.

The Tom Folley Timber Company, joint venture, made its first sale in 1953, the year the venture was founded and its 6,000 acres of timberland acquired. Timber was sold in generally the same manner as the Brush Creek sales but the sales agreements were all oral. Most of the sales were made to Woolley Logging Company with smaller sales to E. G. Whipple Mill. The sales were on a scale basis at a stated price per thousand. The plaintiff testified that he purchased his interest in the joint venture property as an investment and to do "whatever we had to do to make a profit." Plaintiff also participated in all policy decisions regarding this tract.

From 1957 through 1959 plaintiff was also in the road construction business. In 1958 he invested in a motel and restaurant and in 1960 acquired a bowling alley which he is presently operating. Since 1956 plaintiff has had no connection with the sawmill business and since 1958 no further connection with the planing mill. The only activity of Kruse Lumber Co. – Planer and Tom Folley Timber Company since 1958 has been the disposal of the timber on the two tracts.

Under the statute, ORS 316.408(1), *supra,* property is excluded from treatment as a capital asset if it is held by the taxpayer "primarily for sale to cus-

tomers in the ordinary course of his trade or business." "Primarily" means "of first importance" or "principally." *Malat v. Riddell*, 383 US 569, 86 S Ct 1030, 16 Led2d 102, 17 AFTR2d 604, 66-1 USTC ¶ 9317 (1966); *McCollum v. Commission*, 2 OTR 486 (1967).

■ Each case must be decided on its facts to determine whether property is held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. *Gamble v. Commissioner*, 242 F2d 586, (5th Cir 1957), 50 AFTR 2033, 57-1 USTC ¶ 9516 (1957).

Various factors should be considered: the purpose for which the property was acquired, i.e., resale, investment, income; the continuity and frequency of purchases and sales including the size and character of the properties; the length of time the property was held before sale and the degree of development or improvement of the property; the extent of advertising for sale or solicitation of sales directly by the taxpayers or their agents; a comparison of the sales transactions with the other business activities of the sellers. *McCollum v. Commission, supra.*

In *McCollum* the court found that the taxpayers had failed to sustain the burden of proving that they were not holding the timber primarily for sale to customers.

In that case the logging of the timber and the sale of the logs was accomplished by an agent of the taxpayer. It was held in *Boeing v. Commissioner*, 107 F2d 305 (9th Cir 1939), 23 AFTR 350, 39-2 USTC ¶ 9682, that a similar arrangement made the logger the agent of the seller and the logger's sales activities were sufficient to place the taxpayer, as the principal, in the business of selling logs to customers and not entitled to a capital gain.

■ The facts in *McCollum* are not similar to those in the instant case. The arrangement herein between the partnership and the joint venture and the purchasers of the timber more nearly resembles the facts in *Isaac S. Peebles v. Commissioner*, 5 TC 14 (1945); *Estate of M. M. Stark v. Commissioner*, 45 BTA 882 (1941); *J. J. Carrol v. Commissioner*, 27 BTA 65 (1932); *John W. Blodgett v. Commissioner*, 13 BTA 1388 (1928); and *Ah Pah Redwood v. Commissioner*, 28 P-H Tax Ct memo 178 (1959). In each of those cases there was no agency relationship between the taxpayer and the logger. The buyer purchased the timber outright and sold the logs on his own behalf.

Consequently, the partnership and the joint venture cannot be considered engaged in the sale of timber to customers in the regular course of business through an agency relationship with Woolley Logging Company and E. G. Whipple Mill.

The partnership and the joint venture did not advertise the timber for sale nor solicit purchases. This is not unusual, however, under the circumstances because the individuals involved were all interrelated in the various partnerships and logging and sawmilling companies. It is fair conclusion that they were all familiar with the Brush Creek and Tom Folley timber.

■ One of the main tests to be applied to determine if the property is held primarily for sale to customers in the regular course of a trade or business is the frequency and continuity of sales over a period of time. *Dunlap v. Oldham Timber Co.*, 178 F2d 78 (5th Cir 1950), 38 AFTR 1228, 50-1 USTC ¶ 9134. "Although the test has been called an equivocal one, and not controlling, frequency of sales has been emphasized as showing business activity, while isolated sales are

noted as indicating the lack of a course of business."
*Gamble v. Commissioner, supra,* 51-1 USTC at 57,036,
50 AFTR at 2038.

After the partnership acquired the Brush Creek
tract in 1948 the first timber sale from this tract was
made in 1950. Sales continued regularly through 1960,
the tax year in question.

The Tom Folley tract was acquired in 1953 and the
first timber sale was made the same year with sales
continuing through 1960.

The following is a summary of the footages sold
from the two tracts from the time of the first sales:

| Kruse Lumber Co. – Planer Footages Sold | | Tom Folley Timber Co. Footages Sold | |
|---|---|---|---|
| 1950 | 5,577,365 | | |
| 1951 | 12,939,500 | | |
| 1952 | 9,937,170 | | |
| 1953 | 7,022,438 | 1953 | 12,819,928 |
| 1954 | 1,215,190 | 1954 | 23,303,250 |
| 1955 | 11,335,114 | 1955 | 17,624,912 |
| 1956 | 8,143,064 | 1956 | 7,973,902 |
| 1957 | 14,453,825 | 1957 | 3,793,610 |
| 1958 | 17,944,024 | 1958 | 4,298,832 |
| 1959 | 9,787,482 | 1959 | 1,597,496 |
| 1960 | 7,904,394 | 1960 | 1,174,480 |
| | 106,269,566 | | 72,586,410 |

It is apparent that sales have been frequent and
continuous since 1950 on the Brush Creek tract and
since 1953 on the Tom Folley tract. It is also true
that the plaintiff as an individual did not extensively
participate in the sales which were conducted by the
partnership and by the joint venture. However, there
was testimony that the plaintiff participated in the
policy decisions concerning the sales from both tracts.

The history of the two tracts from their purchase to 1960 would indicate that the owners acquired the property to harvest and sell the timber at a profit. This they did by the frequent and continuous sales over the several years involved. The fact that the sales were all to one company—Woolley Logging Company—is not unusual under the circumstances. The sale of timber to one individual logger could hardly be compared to the sale of lots by a subdivider. Apparently Woolley Logging Company was large enough to log the amounts listed and sell the logs to various buyers in the area. The price to Woolley varied from $8.00 to $20.00 to $30.00 per thousand over the years.

The facts show a sufficient frequency and continuity of sales in the two tracts to warrant the conclusion that both the partnership and the joint venture were holding the two tracts primarily for sale to customers in the regular course of business.

As the timber on both tracts did not constitute capital assets in the hands of the partnership and the joint venture, it follows that the plaintiff, as an individual member of the partnership and joint venture, cannot treat the property as capital assets on his individual return. Partnerships as such are not taxable entities. An individual carrying on business in a partnership is liable for income tax only in his individual capacity. ORS 316.200. The partnership is a conduit through which passes each partner's separate share of the partnership income. As the partnership and the joint venture cannot treat the timber sales as sales of capital assets, plaintiff as an active member of both entities must report his distributive share of the income from the sales as ordinary income and not as a capital gain.