The MUNICIPAL BOND CORPORA-
TION, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 18594.

United States Court of Appeals
Eighth Circuit.

Sept. 1, 1967.

Joseph A. Hoskins, Kansas City, Mo., for petitioner; Walter J. Kennedy, William J. Shapiro and Hoskins, King, Springer & McGannon, Kansas City, Mo., were with him on the brief.

Anthony Z. Roisman, Atty., Dept. of Justice, Washington, D. C., made argument for respondent; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer, Municipal Bond Corporation, has filed this timely petition for review of the portions of the decision of the Tax Court filed September 2, 1966 (opinion 46 T.C. 219), which hold that profits realized from certain specified sales of real estate made by taxpayer were not entitled to capital gain treatment but should be taxed as ordinary income. The transactions here pertinent relate to real estate sales made by taxpayer during the years 1954 to 1958 inclusive and installments collected in such years on sales previously made.

Taxpayer reported income on a calendar year basis. The tax years here involved are 1954 to 1958. Taxpayer reported and paid tax on all profits derived from all sales of real estate as capital gain income.

The issue presented by this litigation is whether the profits realized from the sales of real estate made by the taxpayer during the tax years here involved and profits from the sales of real estate in prior years, installment payments from which were received during the 1954–58 period, were ordinary income from sale of real estate held primarily for sale to customers in the ordinary course of taxpayer's trade or business within the meaning of §§ 1221 and 1231, I.R.C.1954.

This case has previously been before us on taxpayer's petition for review of the decision of the Tax Court. (Opinion 41 T.C. 20). Municipal Bond Corporation v. Commissioner of Internal Revenue, 8 Cir., 341 F.2d 683. We there held that the Tax Court erred in determining that the word "primarily" as used in the above cited statutes was to be interpreted as meaning that a purpose may be primary if it is substantial. We held that primarily means "of first importance" or "principally". Such interpretation is fully supported by Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102, subsequently decided. The correctness of such interpretation is not here challenged.

We also held that all the relevant factors should be considered in determining

the purpose for which taxpayer held the property. We conceded that intention at the time of sale is a factor entitled to full consideration but held such intention alone cannot be conclusive. We set out a quotation from Mertens at p. 689 of 341 F.2d holding that such a literal interpretation of the statute would nullify the statutory provision for capital gain or loss treatment as it will invariably be found that there was an intention to sell at the time of the sale.

We also held that taxpayer's purpose for holding property may vary with respect to different tracts and that each transaction should be examined and considered independently. We further held that taxpayer is a separate, distinct and legitimate corporate entity and that no basis existed for piercing the corporate veil and that operations of other related corporations have no probative force in establishing taxpayer's purpose in holding real estate except to the extent that it may be shown that another corporation was acting as an agent for the taxpayer. We reversed the Tax Court's decision on the ground that it was induced by an erroneous view of the applicable law and remanded for further proceedings consistent with the views expressed in our opinion.

The original evidentiary hearing in the Tax Court was before Judge Fisher. Upon remand, by reason of Judge Fisher's death, the decision of the Tax Court was made by Judge Drennen upon the basis of the record made before Judge Fisher. Neither of the decisions of the Tax Court was reviewed by the Tax Court as a whole.

The Tax Court properly determined that taxpayer was engaged in the business of acquiring and holding real estate both for investment and for sale in the ordinary course of its business. As held in our prior opinion, it is possible for a dealer in real estate to hold specific property for investment rather than for sale in the ordinary course of its business. See Mathews v. Commissioner of Internal Revenue, 6 Cir., 317 F.2d 360.

The Tax Court, pursuant to our mandate, made a determination as to the primary purpose for which each tract of real estate in controversy was held. With respect to the installment sales, payments on which were received during the taxable years, the Tax Court found that three of the properties sold were entitled to capital gain treatment but that the remaining twelve properties were held primarily for sale to customers in the ordinary course of business with profits taxable as ordinary income.

Taxpayer made nineteen sales of real estate in the 1954–58 period. Upon remand, the government conceded one sale was entitled to capital gain treatment. The Tax Court found six additional sales were entitled to capital gain treatment but that the profits from the remaining twelve sales were of property primarily held for sale and hence taxable as ordinary income. This petition for review concerns the aforesaid twelve installment sales and the twelve 1954–58 sales found by the Tax Court to be subject to ordinary income tax treatment.

Our review here concerns only those tracts found by the Tax Court to be held primarily for sale. No attack is made upon the portion of the Tax Court's decision favorable to the taxpayer.

The facts pertinent to this review may be found in the two reported opinions of the Tax Court and our previous opinion. A restatement of the extensive factual background would require far more space than is warranted. Necessary material facts will be set out in the course of the opinion.

■ We agree with the taxpayer's contention that our statement of the law to be applied as set out in our former opinion is the law of the case and that the Tax Court is required to follow the law as there stated. Poletti v. Commissioner of Internal Revenue, 8 Cir., 351 F.2d 345, 347. See Gunn v. United States, 8 Cir., 283 F.2d 358, 361.

It is our belief, arrived at from a careful reading of the Tax Court's opinion, that such court made a conscientious ef-

fort to apply the standards set forth in our prior opinion but that it failed to follow our mandate in several material respects. The Tax Court, after stating that it had given consideration to all factors set out by the various courts in determining taxpayer's purpose in holding various parcels of real estate, expresses the view thus stated:

"If the principal purpose of the corporation at the time of acquisition of the property is to hold it until the price goes up and then sell it at a profit this would seem to be profit arising out of the everyday operation of that corporation's business and a sale of property held primarily for sale to its customers in the ordinary course of that business.

\*　　\*　　\*　　\*　·　\*　　\*

"We use this approach to make the findings required because to accord capital gains treatment to the profits derived from the sale of all the properties here involved except those shown by direct affirmative evidence to have been held primarily for sale to customers would, in our opinion, do violence to the legislative purpose in enacting the capital gains provisions, and might also result in an unintended shifting of the burden of proof." 46 T. C. 219, 229.

We believe that the statement just quoted is too broad in that it fails to give adequate consideration to the length of the holding period and it fails to give proper consideration to taxpayer's intent in acquiring and holding the property. Moreover, particularly with respect to the Frisco property hereinafter discussed, there is no substantial evidence to support a finding that the taxpayer acquired such property primarily for sale in the ordinary course of its business.

Cases relied upon by the Commissioner, such as Margolis v. Commissioner of Internal Revenue, 9 Cir., 337 F.2d 1001, holding that property held for resale when the price is right is held for sale in the ordinary course of business, appear to be based largely upon the interpretation of the word "primarily" in the statute as meaning "substantial". This is re-

flected by the opinion of the Ninth Circuit in Malat v. Riddell, 347 F.2d 23, written by the same judge who wrote *Margolis*. Reliance is made upon the definition of "primarily" made in Rollingwood Corp. v. Commissioner of Internal Revenue, 9 Cir., 190 F.2d 263, equating it in meaning with "substantial". The foundation for such position is in our view completely wiped out by the Supreme Court in Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030. That case squarely rejects the Ninth Circuit's interpretation of "primarily". The Court in the course of its opinion states:

"The purpose of the statutory provision with which we deal is to differentiate between the 'profits and losses arising from the everyday operation of a business' on the one hand (Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29) and 'the realization of appreciation in value accrued over a substantial period of time' on the other. (Commissioner of Internal Revenue v. Gillette Motor Transport, Inc., 364 U.S. 130, 134, 80 S.Ct. 1497, 1500, 4 L.Ed.2d 1617.) A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in § 1221(1), 'primarily' means 'of first importance' or 'principally.'"

In Scheuber v. Commissioner of Internal Revenue, 7 Cir., 371 F.2d 996, taxpayer was a real estate dealer. The property in controversy was held for nine years. The court, following *Malat*, recognizes that a real estate dealer can hold real estate for investment purposes. The court sets out and discusses the guidelines to be considered and reverses the ultimate finding of the trial court that the property was held primarily for sale to customers in the ordinary course of business, stating inter alia:

"As the Tax Court's findings indicate, this real estate was purchased and held for realization of appreciation in value to be accrued over a substantial period of time, with no intensive effort to improve or sell it. It was always intended ultimately to be disposed of to pro-

vide the 'annuity' of which Mr. Scheuber spoke, but not to be disposed of to customers in the ordinary course of trade." 371 F.2d 996, 999.

In Wood v. Commissioner of Internal Revenue, 5 Cir., 276 F.2d 586, the court upset the Tax Court's finding that industrial tracts acquired by a real estate dealer were held primarily for sale to customers, determining that they were primarily acquired for rental and that the sales made were for financing and for purposes of making the remainder of the land more attractive to prospective tenants.

■ As we interpret *Malat*, a real estate dealer may under appropriate circumstances acquire and hold a tract of real estate primarily for the purpose of investment with the hope of long term appreciation and if such is the case, a subsequent sale is not conclusive on the question of primary purpose in acquiring and holding the real estate.

■ As we stated in our prior opinion, the issue of taxpayer's primary purpose in acquiring and holding property is one of fact to be determined by the fact finder, here the Tax Court, upon the basis of the totality of the evidence.

■ We cannot agree with the Commissioner's contention that the taxpayer, merely because he is engaged in the business of holding real estate, is required to introduce more than the normal quantity of evidence to prove that a particular property is not held for sale in the ordinary course of his business. If no evidence is introduced in the Tax Court, the presumption of correctness of the Commissioner's determination will of course prevail. The burden is upon the taxpayer to overcome such presumption. The presumption can be met by a preponderance of the evidence. Burnet, Commissioner v. Niagara Falls Brewing Co., 282 U.S. 648, 654, 51 S.Ct. 262, 75 L.Ed. 594.

■■ The decisions of the Tax Court are reviewed in the same manner and to the same extent as decisions of the District Court tried without a jury. Hence, the Tax Court's findings cannot be set aside unless they are clearly erroneous.

Smith's Estate v. Commissioner of Internal Revenue, 8 Cir., 313 F.2d 724, 727; Loco Realty Co. v. Commissioner of Internal Revenue, 8 Cir., 306 F.2d 207, 209. "Findings of fact by the Tax Court are not binding upon this court if there is no substantial evidence to sustain them, if they are against the clear weight of the evidence, or if they are induced by an erroneous view of the law." Greenspon v. Commissioner of Internal Revenue, 8 Cir., 229 F.2d 947, 949.

■ We recently reaffirmed such standards in Farmers Bank of Clinton v. Julian, Trustee, 8 Cir., 383 F.2d 314 (August 8, 1967). The clearly erroneous rule applies to permissible inferences drawn from undisputed evidence. Fearing v. Commissioner of Internal Revenue, 8 Cir., 315 F.2d 495; Miller v. Commissioner of Internal Revenue, 8 Cir., 295 F.2d 538.

We believe that the taxpayer has demonstrated that the Tax Court has applied improper legal standards in the respects hereinabove set out in reaching its decision. The normal course would be to remand the case to the Tax Court for new findings consistent with the views here expressed, which is the course followed in *Malat*. However, by reason of the long period of years this case has been pending and the fact that there has been a previous remand, we are reluctant to take such action if any other course is available. Over eight years have elapsed since the last of the tax years here involved and further delay in the termination of this litigation should be avoided to the fullest extent possible.

We have carefully scrutinized the evidence with respect to each of the tracts of real estate here involved with a view of ascertaining whether there is substantial evidence to support the Tax Court's findings when the law as stated in our prior opinion and hereinabove is applied to the evidence.

With respect to the Frisco property treated in division 9 of the Tax Court's opinion, we are convinced that there is no substantial evidentiary support for the

Tax Court's determination that such property was acquired and held primarily for sale in the ordinary course of the taxpayer's business. Taxpayer's initial contact with the Frisco property was its purchase of a 240 acre tract including this property at a tax sale, about 1940. The present tract consists of 87.3 acres which adjoins the Frisco railroad for one and one-half miles. By February 10, 1947, taxpayer had perfected title to this land by obtaining a warranty deed from the former owner. Its over-all cost for the Frisco tract was approximately $80 an acre.

It is obvious that the taxpayer recognized this property as a bargain which would yield a good profit if held for a substantial period of time. Taxpayer's testimony is that its purpose was to use the property for an industrial park development and that it contemplated the construction of industrial properties along the right-of-way for rental. Sometime about 1947, taxpayer made initial contact with Frisco seeking their aid in providing switch tracks and in the financing and development of the property and the securing of prospective tenants. At that time Frisco was not interested. About 1950, Frisco contacted taxpayer when it was trying to induce Ford Motor Company to select a plant site on its right-of-way, and Frisco received taxpayer's authorization to quote Ford a price of $4300 an acre for a plant site. This deal did not materialize. Shortly thereafter an announcement was made in a newspaper story that a paved road would be constructed which would give access to the land in controversy. Frisco, on its own motion, opened negotiations for control of the land. Sale of the land to Frisco was discussed as well as leasing. This culminated in 1953 in a ten-year lease of the property to Frisco at $100 per acre per year rental, with option to renew for eighty-nine years. Taxpayer's testimony is that it wanted Frisco to have an investment in the property which would encourage it to exercise the option to extend the lease and that this was accomplished by Frisco agreeing to buy five acres at $4000

an acre. The lease also gave Frisco the option of buying additional land for $4000 per acre. Taxpayer's testimony is that such option was inserted upon the insistence of the railroad. Frisco under the option purchased a 7.91 acre tract in 1954 and tracts of 2 acres and .92 acres in 1956. The Tax Court upheld the Commissioner's contention that all of such purchases by Frisco were of real estate held by the taxpayer primarily for sale in the ordinary course of business. Taxpayer's testimony as to its intent and purpose is not fairly contradicted and is entirely consistent with the evidence as a whole.

The first sale to Frisco occurred some six years after taxpayer had perfected title to the property and some twelve years after the tax sale purchase. There was no immediate demand for this property for its highest and best use—an industrial site with trackage—for a considerable period after the property had been acquired. The subsequent building of the road along the property was an important factor in its increase in value. The annual rent called for by the lease when it reached the $100 per acre per year level was in excess of the original cost. The option, except for the initial purchase of five acres, was at Frisco's insistence. Such option would not compel Frisco to buy and under the circumstances can only fairly be considered as a reasonable inducement to secure a favorable lease. Taxpayer's efforts to advertise or offer the property for sale were minimal. The fact that taxpayer was ultimately able to obtain an extremely favorable long term lease upon the property is corroborative of its intent to acquire and hold the property for investment.

 We hold that the Tax Court's determination that taxpayer acquired the Frisco property primarily for sale in the ordinary course of its business is clearly erroneous upon the basis that there is no substantial evidence to support such finding. We hold the proceeds of the sale of portions of the Frisco tract are entitled to capital gain treatment.

With respect to all of the other transactions involved in this review, much closer questions are presented. While we if serving as the fact finder might reach a different conclusion with respect to at least some of the remaining transactions, we are unable to say that the taxpayer has met the burden resting upon it to show that the fact findings with respect to such transactions are clearly erroneous.

In summary, we again observe that no attack is here made upon the portion of the Tax Court's decision favorable to the taxpayer. The decision of the Tax Court denying taxpayer capital gain treatment on sales made from the Frisco tract is reversed. Taxpayer is entitled to capital gain treatment on the proceeds of sale of the parcels sold from the Frisco tract. In all other respects, the decision of the Tax Court is affirmed. Inasmuch as taxpayer has paid the deficiency determined by the Tax Court, this case is remanded to the Tax Court for determination of the refund due taxpayer.