**Jerome S. MURRAY and Grace H. Murray**

v.

**The UNITED STATES.**

No. 364–68.

United States Court of Claims.

May 15, 1970.

Scott P. Crampton, Washington, D. C., attorney of record, for plaintiffs.

Stanley Worth, Joseph A. McMenamin, William T. Althoff, and Korner, Doyle, Worth & Crampton, Washington, D. C., of counsel.

Frances M. Foltz, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LARAMORE, Judge.

This is an action to recover alleged overpayments of Federal income tax for the tax years 1965 and 1966. Defendant has moved for partial summary judgment pursuant to Court of Claims Rule 64(b) and (e), with respect to one of the issues raised by plaintiffs in this case, i. e., whether income received in the year 1965 as deferred payment upon a transaction which occurred in 1955 is ordinary income or capital gain.

The pertinent facts alleged by plaintiffs, which we assume to be correct for the purpose of deciding defendant's motion, are as follows: Plaintiffs, Jerome S. Murray and Grace H. Murray, are husband and wife who keep their books and file their Federal income returns on the cash basis method of accounting and by calendar years. For the calendar years in suit, 1965 and 1966, plaintiffs as husband and wife filed joint tax returns.[1]

For a number of years prior to 1965, plaintiff had been acquiring real estate in the vicinity of Washington, D. C. Some of these tracts of land produced rental income. Others were unimproved but were being held for the realization of appreciation in value over an extended period of time. On December 8, 1952, Mr. Murray entered into a contract to purchase approximately 500 acres of unimproved real estate in Prince George's County, Maryland, from the heirs of Fulton R. Gordon, Sr. Thereafter, problems arose with respect to the title to this real estate such that between 1952 and early 1955 the vendors were unable to transfer clear title to the property.

While efforts were being made to resolve these title problems, Mr. Murray was approached by a real estate broker who had a party interested in acquiring

---

1. Since the activities of Jerome S. Murray gave rise to the issue now under consideration, Grace H. Murray having merely signed a joint income tax return with her husband, the singular term "plaintiff" when used hereinafter will refer only to Jerome S. Murray.

his rights to this property. Following extended negotiations resulting from this overture, Mr. Murray ultimately in March 1955 transferred to the Mar-Dill Holding Corporation his interest in the original contract of purchase. Plaintiff at the same time also transferred his interests in several other small tracts which he had acquired in the interim in an effort to clear the title to the original tract and to supplement his anticipated ownership of the entire 500 acres.

Plaintiff reported this sale in his Federal income tax return for 1955, under the installment method, as a long-term capital gain. The return was examined by representatives of the Internal Revenue Service, and it was determined that plaintiff had overstated the amount of the gain. Accordingly, the Commissioner of Internal Revenue sent to plaintiff a notice of overassessment in which he determined that plaintiff was entitled to a refund of $556.43, based primarily upon a recomputation of the long-term capital gain from the 1955 sale of the so-called Gordon tract.

The Commissioner of Internal Revenue thereafter, upon examination of the income tax returns filed by plaintiff for the years 1957 through 1961, determined that plaintiff was in the business of dealing in real estate and that collections on the 1955 sale of the Gordon tract should have been reported in 1957 and 1961 as ordinary income. The Commissioner's determination was upheld by the U.S. Tax Court in Jerome S. Murray, 24 T.C.M. 762 (1965), and in a per curiam opinion by the Fourth Circuit, 370 F.2d 568 (1967). A petition for certiorari was denied by the Supreme Court, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 95 (1967).

In 1965 plaintiff received $140,363.16 as an installment payment resulting from the sale in 1955 of his interests in the

Gordon tract. The taxable portion of this amount was $125,288.15 and was reported by plaintiff in his Federal income tax return for 1965 as long-term capital gain. The Commissioner of Internal Revenue determined that this $125,288.15 should have been reported as ordinary income and assessed a deficiency which included this adjustment. Plaintiff paid the deficiency, filed a claim for refund, and ultimately brought this suit.

The theory advanced by defendant in support of its motion for partial summary judgment is that plaintiff, by virtue of the Tax Court's decision in Jerome S. Murray, supra, as affirmed on appeal, is collaterally estopped from contesting the Internal Revenue Service's determination that the taxable portion of installment payments received from the 1955 sale of his interests in the Gordon tract was ordinary income. Plaintiff responds that the doctrine of collateral estoppel does not apply to a subsequent proceeding where, as here, there has been (1) a change in the tax year, (2) a change in the factual situation, and (3) a change in the legal climate. Plaintiff also asserts that the notice of overassessment issued by the Commissioner of Internal Revenue for the year 1955 was an official act dictating that in the event of a subsequent inconsistent determination by the Service, the Commissioner must bear the burden of showing that his original determination was erroneous.[2] As will be seen, plaintiff's positions are not well taken. We hold, accordingly, that plaintiff is collaterally estopped from contesting the characterization for tax purposes of the 1955 transaction and the proceeds thereof.

The leading case on the doctrine of collateral estoppel in the field of Federal taxation, relied upon by both parties, is the Supreme Court decision in Commissioner of Internal Revenue v. Sunnen.

2. On first impression, it appeared that plaintiff was asserting, as had been asserted in the prior *Murray* case, that by his actions the Commissioner *himself* was estopped from challenging the initial treatment of the transaction. A careful review of plaintiff's brief, as supplemented by oral argument, has assured us, however, that plaintiff's statements are instead merely in support of his burden of proof argument.

333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The *Sunnen* case involved, *inter alia*, whether the *taxpaper* was taxable on royalty payment received in 1937 by his wife pursuant to a 1928 license contract which the taxpayer had assigned to her; the Board of Tax Appeals, in an earlier proceeding in 1935 dealing with the taxpayer's income tax liability for the years 1929–1931, had concluded that he was *not* taxable on the royalties received by his wife during *those* years under the 1928 license agreement.

Before reaching the merits, the Court addressed itself to whether the above-described issue was capable of disposition by procedural bar. With respect to collateral estoppel and its relationship to identity of fact and law in consecutive proceedings, the Court stated at pages 599–600, 68 S.Ct. at page 720:

> * * * [C]ollateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some year thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. * * *.

> And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. *It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * *.* If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. * * * And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. * * * [A] *judicial declaration intervening between the two proceedings* may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. * * *. [Emphasis supplied; citations and footnote omitted.]

Continuing, by way of emphasis, the Court added at page 601, 68 S.Ct. at page 721:

> Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. * * * And if the very same facts and no others are involved in the second case, a case relating to a different tax year, *the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. * * *.* [Emphasis supplied; citation omitted.]

Finally, after setting out the legal principles which comprise the doctrine of collateral estoppel, the Court turned to the application of those principles to the case there under consideration with the following statement at page 603, 68 S.Ct. at page 722:

> * * * It must therefore be determined whether this *Clifford-Horst* [Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75] line of cases represents an intervening legal development which is pertinent to the problem raised by the assignment of the 1928 agreement and which makes manifest the error of the result reached in 1935 by the Board. If that is the situation, the doctrine of collateral estoppel becomes inapplicable. A different result is then permissible as to the royalties paid in 1937 under the agreement in question. But to determine whether the *Clifford-Horst* series of cases has such an effect on the instant proceeding necessarily requires inquiry into the merits of the controversy growing out of the various

contract assignments from the taxpayer to his wife. To that controversy we now turn. [Footnote omitted.]

The Court, upon examination, concluded that the *Clifford-Horst* line of cases *had* effected an *intervening* change in the controlling legal principles and thereby rendered inapplicable the doctrine of collateral estoppel.

The prior proceeding which forms the basis of defendant's motion here is the Tax Court's decision in *Jerome S. Murray, supra,* as affirmed. Involved in the Tax Court suit were transactions by Mr. Murray with respect to several of his properties, including the 1955 sale of his interests in the Gordon tract. The Tax Court opinion explicitly utilized a two-step approach, *i.e.,* first an analysis of the taxpayer's real estate activities generally, then an analysis of the taxpayer's activities respecting, and his relationship to, specific property, in reaching its decision.

As to the more basic question regarding the taxpayer's real estate activities generally, that is, whether he was engaged during the relevant period in the business of dealing in real estate (though he may also have been an investor as to certain property) and in which business properties were held for sale, the Tax Court concluded at pages 781–782:

> Because of the number and continuity of Murray's sales of real estate and/or contractual interests therein, the extent and substantiality of such transactions, the nature and extent of petitioner's business, and our conclusion based on the entire record that many items of such property were acquired and held by him, not for the purpose of obtaining income from them as an investor but for the primary purpose of realizing a profit

from their sale as a dealer, we are of the opinion that Murray was in the business of selling real estate and/or contractual interests therein during all of the years here in question. [Footnote omitted.]

As to the more specific question regarding the business-investment nature of the taxpayer's relationship to the Gordon tract, the Tax Court concluded at page 783:

> * * * As we have already concluded, Murray was in the business of dealing in such property. Accordingly, and in the absence of any convincing proof that such items of property [*i.e.,* Murray's interests in the Gordon tract] were acquired and held by Murray in his role as an investor, *we conclude that [the Gordon tract interests] constituted property held by him primarily for sale in the ordinary course of his business, and that the proceeds of the [sale] thereof constituted ordinary income.* [Emphasis supplied.]

It is readily apparent that the Gordon tract-aspect of the original *Murray* case and the instant suit exhibit identity of parties, underlying transactions, and issues raised; only the tax years differ. Accordingly, it is our view that, absent the successful avoidance by plaintiff of collateral estoppel on one of the bases delineated in the *Sunnen* case, the immediately preceding identities support a *prima facie* application of the doctrine here.[3] We turn now to plaintiff's arguments in avoidance thereof.

Plaintiff's argument that collateral estoppel should not apply because there has been a change in years (*i.e.,* the two suits involve different and somewhat separated tax years) may be summarily dismissed. Suffice it to say that the *Sunnen* case stands, as much as for

3. We note in passing that plaintiff has referred us to the District of Columbia Tax Court's decision in Jerome S. Murray v. District of Columbia, 96 Wash.L.Rep. 1161 (1968), wherein it was held, contrary to the holding of the U. S. Tax Court, that certain property (not the Gordon tract) sold in 1957 by Mr. Murray and his co-owner was not held primarily for sale in the ordinary course of business for the purpose of a local tax. This decision in which the subject matter, underlying transaction, and parties differ from their respective counterparts in the U. S. Tax Court *Murray* case and here, has no bearing on the instant suit.

anything, for the proposition that collateral estoppel applies in a *later* year to an issue which has been litigated in an earlier year. *See,* Commissioner of Internal Revenue v. Sunnen, *supra,* 333 U.S. at 598–600, 68 S.Ct. 715.

▆ Similarly lacking in merit is plaintiff's misplaced reliance upon an alleged change in the factual situation (*i.e.,* that the nature of plaintiff's activities changed in years subsequent to the year of sale.) This reliance is perhaps attributable to a less than clear understanding of the tax considerations incident to the Gordon tract transaction. Plaintiff elected to report the profit from that transaction under the installment method of section 453 of the Internal Revenue Code of 1954.[4] The function of section 453 is one of timing, not characterization. That is to say, use of the installment method defers the reporting of taxable gain, but in no way characterizes the nature of the gain. Certain statutory prerequisites having been satisfied, either capital gain or ordinary gain may be reported on the installment method, the character of the gain being determined by the nature of the underlying transaction.

Plaintiff's transfer of his interest in the Gordon tract constituted a completed sale in 1955. And, the character of the transactional gain was fixed by the relevant circumstances surrounding that *sole tax-operative event,* irrespective of future changes in dealings or relationships; only the *reporting* of taxable gain was deferred. There was no other tax-operative event occurring in a later year, the tax consequences of which, owing to changed circumstances, might have differed from those incident to the Gordon tract transaction.[5] *See,* Glidden Co. v. United States, 241 F.Supp. 195 (N.D. Ohio 1964); Glidden Co. v. United States, (N.D.Ohio), decided October 21, 1966 (18 A.F.T.R.2d 5933). Accordingly, plaintiff cannot avoid the doctrine of collateral estoppel on the basis of alleged factual changes in later years.

Plaintiff's principal argument in avoidance of the doctrine of collateral estoppel is that a change in the legal climate (*i.e.,* an intervening change in the controlling legal principles) occurred during the interim between the consecutive proceedings. This change, plaintiff urges, was wrought by the Supreme Court's holding in Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966), that the term "primarily," as used in section 1221(1) of the 1954 Code,[6] means

---

4.  Section 453 provides in parts pertinent to this suit:
    "(a) Dealers in personal property.—
    "(1) * * * [A] person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.
    *     *     *     *     *
    "(b) Sales of realty * * *.—
    "(1) General rule.—Income from—
    "(A) a sale or other disposition of real property, or * * * may * * * be returned on the basis and in the manner prescribed in subsection (a)."

5.  Plaintiff refers us to Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952), wherein the Supreme Court held that the char-

acter of losses sustained by the taxpayers by virtue of their liability as transferees of liquidation distribution assets, though sustained in a year subsequent to liquidation, was nonetheless determined by the character of the earlier liquidation distributions. The diversity of facts and issues involved between the time of liquidation and loss, however, negates any relevance the *Arrowsmith* case might have to the collateral estoppel issue in the instant suit. If anything, *Arrowsmith* endorses the proposition urged by defendant here that the character of plaintiff's gain was, absent a *Sunnen* situation, forever determined by the character of the transaction as it occurred in 1955. In any event, the *Arrowsmith* argument was also raised on appeal and rejected in the *Murray* case.

6.  Section 1221(1) provides in this respect:
    " * * * [T]he term 'capital asset' means property held by the taxpayer

"of first importance" or "principally." Theretofore, several courts of appeals were in conflict as to whether a "substantial" purpose satisfied the "primarily" requirement.[7] As indicated by the Supreme Court's holding, it did not.

■ We agree that the *Malat* decision settled what had been a much-contested question and, to the extent that the term "primarily" was definitively interpreted, modified or changed prior law. We disagree, however, that the *Malat* case constituted an *intervening* change in the legal climate so as to vitiate the doctrine of collateral estoppel in the suit now before us.

The Supreme Court rendered its opinion in the *Malat* case *after* the `Murray` case had been decided by the Tax Court, but *prior to* affirmance by the Fourth Circuit. There can be no doubt, however, that the rationale expressed in the *Malat* opinion was taken into consideration throughout the *Murray* proceedings. In the first instance, the Tax Court's opinion implicitly recognized the definitional conflict which existed regarding the term "primarily" and doubtless intended to cover the possible alternatives with the following footnote:

We reach this conclusion [that the taxpayer acquired and held many items of property primarily as a dealer, rather than as an investor] regardless of whether the word "primarily" as used in the statutory phrase "held by the taxpayer primarily" is construed to mean "substantially" or to mean "of first importance" or "principally." [Citation omitted.] (24 T.C.M. at 781, fn. 6.)

The possible effect of the *Malat* decision upon the Tax Court decision in *Murray* was considered, moreover, by the Fourth Circuit during the course of the unsuccessful *Murray* appeal, and later upon an unsuccessful petition for rehearing. The Fourth Circuit's *per curiam* affirmance of the Tax Court stated with particular pertinence here 370 F.2d at page 568:

* * * Judge Kern's opinion is entirely consistent with the subsequent decision of the Supreme Court in Malat v. Riddell, * * *. Nothing in *Malat* requires a modification of the result in the Tax Court. [Citation omitted.]

As already indicated, a petition for certiorari was thereafter denied by the Supreme Court.

Neither did the several cases cited by plaintiff that were decided after the *Malat* case constitute an intervening change in the law. *See,* Scheuber v. Commissioner of Internal Revenue, 371 F.2d 996 (7th Cir. 1967); Heller Trust v. Commissioner of Internal Revenue, 382 F.2d 675 (9th Cir. 1967); Municipal Bond Corp. v. Commissioner of Internal Revenue, 382 F.2d 184 (8th Cir. 1967), *rev'g* 46 T.C. 219 (1966), *on remand from* 341 F.2d 683 (8th Cir. 1965), *rev'g and remanding* 41 T.C. 20 (1963). These decisions did not effect, nor did they purport to effect, any meaningful expansion in the scope of the Supreme Court's interpretation of the disputed language in the *Malat* case. To the contrary, all of these decisions expressly relied upon the legal theory of the *Malat* case, as well as its terminology, in arriving at their re-

---

(whether or not connected with his trade or business), but does not include—
   "(1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *."

7. The following cases were cited by the Supreme Court with respect to the definitional conflict: Rollingwood Corp. v. Commissioner of Internal Revenue, 190

F.2d 263 (9th Cir. 1951); American Can Co. v. Commissioner of Internal Revenue, 317 F.2d 604 (2d Cir. 1963), cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 479 (1964); United States v. Bennett, 186 F.2d 407 (5th Cir. 1951); Municipal Bond Corp. v. Commissioner of Internal Revenue, 341 F.2d 683 (8th Cir. 1965); Recordak Corp. v. United States, 325 F.2d 460, 163 Ct.Cl. 294 (1963).

spective results.[8] This being so, such decisions can no more provide the basis for avoiding the doctrine of collateral estoppel than could the *Malat* case itself.

Plaintiff's final argument has reference to the proper allocation of the burden of proof in a case such as the one before us. The issuance by the Commissioner of Internal Revenue of a notice of overassessment for 1955, based upon the Service's acceptance and favorable modification of plaintiff's return, constituted an official act and as such, so the argument goes, was entitled to the same presumption of correctness as the deficiency notice issued for 1957. On this basis, plaintiff urges the proposition that when by acts of equal dignity the Commissioner has answered the same question inconsistently, he must bear the burden of showing that his original determination was erroneous.

We perceive in plaintiff's burden of proof argument none of the recognized bases delineated in the *Sunnen* case upon which the doctrine of collateral estoppel may be avoided. If plaintiff was of the opinion that the Tax Court in the *Murray* case improperly allocated the burden of proof, the purported error was a proper matter for appeal. We note that the argument relating to the burden of proof was answered in the Tax Court opinion and, as we understand it, the matter was in fact appealed. *See,* Jerome S. Murray, *supra,* at 782. Since we believe plaintiff to be collaterally estopped from relitigating the central issue, it is of no moment which party here bears the burden of proof with respect thereto, though the foregoing precludes plaintiff from raising the burden of proof argument as well.

In accorance with the above, defendant's motion for partial summary judgment with respect to the Gordon tract transaction is granted, and to that extent plaintiffs' petition is dismissed.

8. *See,* Scheuber v. Commissioner of Internal Revenue, *supra,* 371 F.2d at 999; Heller Trust v. Commissioner of Internal Revenue, *supra,* 382 F.2d at 680; Munici-

pal Bond Corp. v. Commissioner of Internal Revenue, 382 F.2d 184, 187, 188 (8th Cir. 1967).