**KING RADIO CORPORATION, INC.**
Plaintiff-Appellee,

v.

**UNITED STATES of America**
Defendant-Appellant.

No. 73-1268.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 16, 1973.

Decided Nov. 6, 1973.

Jerome T. Wolf, Kansas City, Mo., for plaintiff-appellee.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Ernest J. Brown, Acting Chief Appellate Section, Tax Div., Dept. of Justice, and Robert J. Roth, U. S. Atty., for defendant-appellant.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

## PER CURIAM.

This is an appeal by the government from a judgment of the United States District Court for the District of Kansas awarding taxpayer a refund for the taxable year 1964 in the amount of $1,854.77 plus interest.

The facts are not in dispute: During the year 1964 taxpayer had constructed a one-story combination office building-production facility of approximately 25,000 square feet. No permanent floor plan was incorporated in the architectural plans for construction of a portion of the building. Accordingly, this portion of the building was not divided by fixed walls or partitions into individual offices and work areas. Upon completion of the building, taxpayer purchased for the undivided portion a movable partition system consisting of ceiling height and glazed rail height partitions.[1] Taxpayer used the partition system to divide this portion of the floor space into offices, rooms, and work areas.

The movable partition system consists of the partitions, and aluminum channels which are fastened to the floor and ceiling with small screws or masonry nails. The partitions are installed by sliding them into an aluminum channel. They are joined by an aluminum "H" section which provides stability and covers the vertical joints. Electrical wiring can be incorporated into the partitions, and the partitions allow for the installation of standard size door frames and doors.

The movable partition system is nonstructural, i. e., it neither bears loads nor in any other manner contributes to the integrity of the building itself. The obvious advantage of such a system, and the reason taxpayer purchased it, is that its flexibility allows the building floor plan to accommodate current needs without requiring expensive and time consuming remodeling which would be required if permanent, fixed wall partitions were used. The system, or a portion thereof, can be stored when not in use, and relocation of the channels causes no noticeable damage to the structure, other than small holes where the screws or masonry nails held the channels in place.

Taxpayer claimed for the year 1964 an investment tax credit for the purchase of the movable partition system under section 38 of the Internal Revenue Code of 1954. The Commissioner disallowed the credit, and taxpayer then successfully brought suit in the district court seeking a refund. The sole issue presented by this appeal is whether taxpayer's investment in the movable partition system qualifies for the investment tax credit.

We find ourselves with this problem adrift in the murky sea of tax law with only one buoy to guide us in reaching a decision. That buoy is the Eighth Circuit's decision in Minot Federal Savings & Loan Assn. v. United States, 435 F.2d 1368 (8th Cir. 1970), wherein the Court held in favor of the taxpayer in a situa-

---

1. The ceiling height partitions reach from the floor to the ceiling and are used to define individual offices and rooms. The glazed rail height partitions are five feet six inches high and are used to define work areas which are not completely enclosed.

tion very similar to the case before us.[2] To determine whether we will follow the same course requires that we turn our attention to the congressional intent underlying the investment tax credit as reflected in the legislative history of the Internal Revenue Act of 1962, and the Treasury Regulations enacted thereunder.

The investment tax credit in issue was incorporated in the Revenue Act of 1962 as section 38 of the Code.[3] Property which qualifies for the credit is termed "section 38 property" and such property is defined in Section 48 of the Code as follows:

" § 48. Definitions; special rules

(a) Section 38 property.—

(1) In general.—Except as provided in this subsection, the term 'section 38 property' means—

2. In *Minot,* the Court held that taxpayer's investment in a movable partition system similar to the system purchased by taxpayer here qualified for the investment tax credit since the partition system was tangible personal property and was not a structural component of the building.

3. "§ 38. Investment in certain depreciable property
   (a) General rule.—There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.
   (b) Regulations.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B. Added Pub.L. 87–834, § 2(a), Oct. 16, 1962, 76 Stat. 962."

4. These Regulations are set forth in 26 CFR § 1.48 et seq. The pertinent portions of such Regulations for our purposes provide in part:
   "§ 1.48 Statutory provisions; definitions; special rules.
   Sec. 48. Definitions; special rules—(a) Section 38 property—
   (1) In general. Except as provided in this subsection, the term 'section 38 property' means—
   (A) Tangible personal property, or
   (B) Other tangible property (not including a building and its structural components) . . .."
   § 1.48–1 Definition of section 38 property
   (c) Definition of tangible personal proper-

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

(ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i)".

These skeletal definitions are given flesh in the Treasury Regulation's Formulated pursuant to the express authorization set forth in section 38(b).[4]

ty. If property is tangible personal property it may qualify as section 38 property irrespective of whether it is used as an integral part of an activity (or constitutes a research or storage facility used in connection with such activity) specified in paragraph (a) of this section. Local law shall not be controlling for purposes of determining whether property is or is not "tangible" or "personal" . . . . For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures) . . . ."

(e) Definition of building and structural components.

(2) The term "structural components" includes such parts of a building as walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as paneling or tiling; windows and doors; all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts; plumbing and plumbing fixtures, such as sinks and bathtubs; electric wiring and lighting fixtures; chimneys; stairs, escalators, and elevators, including all components thereof; sprinkler systems, fire escapes; and other components relating to the operation or maintenance of a building. However, the trem "structural components" does not include machinery the sole justification

The Revenue Act of 1962 and the Regulations in express language extend the investment tax credit to all tangible personal property, and, in some instances, to other tangible property, excluding a building and its structural components. Accordingly, the core issue we must resolve is whether the movable partition system purchased by taxpayer is, within the meaning of the above definitions as used in Revenue Act, tangible personal property, or whether it is other tangible property, and more specifically, whether it is a structural component of taxpayer's building.

The government urges that the proper test to apply in resolving this issue is a functional equivalent or use test, i. e., the function of the property is the criteria by which it should be classified as either tangible personal property or other tangible property. Taxpayer contends that the proper test to apply is a permanency test, i. e., the criteria for classification is whether the property in question is such an integral part of the building that its removal would result in either no noticeable damage to the building, in which case it would be tangible personal property, or would result in at least noticeable, temporary damage to the structure itself, in which case it would be other tangible property (here, a structural component).

Prior to resolving this issue, it is pertinent to set forth portions of the legislative history accompanying the Revenue Act of 1962 so that we may gain an insight into the impetus behind the enactment of the investment tax credit provision of that Act. Sen.Rep.No.1881, 87th Cong. 2d Sess. U.S.Code Cong. & Admin. News 1962, p. 3304 (1962) provides in part:

"The objective of the investment credit is to encourage modernization and expansion of the Nation's productive facilities and thereby improve the economic potential of the country, with a resultant increase in job opportunities and betterment of our competitive position in the world economy. . . ." (Sen.Rep.No.1881 at U.S. Code Cong. & Admin.News 1962, p. 3314)

"[A]ll tangible personal property qualifies as section 38 property . . ." (Sen.Rep.No.1881 at U.S. Code Cong. & Admin.News 1962, p. 3318; See also H.Rep.1447, 87th Cong. 2d Sess. (1962) 1962–3 Cum. Bull. 415).

Conf.Rep.No.2508, 87th Cong. 2d Sess. U.S.Code Cong. & Admin.News 1962, p. 3732 (1962) states in part:

"It is the understanding of the conferees on the part of both the House and the Senate that the purpose of the credit for investment in certain depreciable property, in the case of both regulated and nonregulated industries, is to encourage modernization and expansion of the Nation's productive facilities and to improve its economic potential by reducing the net cost of acquiring new equipment, thereby increasing the earnings of the new facilities over their productive lives." (Conf.Rep.No.2508 at U.S.Code Cong. & Admin.News 1962, p. 3734).

The Technical Explanation of the Bill, 87th Cong. 2d Sess. U.S.Code Cong. & Admin.News 1962, p. 3455 (1962) provides in part with respect to the classification of property:

"Tangible personal property may qualify as section 38 property irrespective of whether it is used as an integral part of manufacturing, production, or extraction or of the furnishing of transportation, communications, electrical energy, gas, water, or sewage disposal services. Local law definitions will not be controlling for purposes of determining the meaning of the term 'tangible personal property'. For purposes of section 48, the term

for the installation of which is the fact that such machinery is required to meet temperature or humidity requirements which are essential for the operation of other machinery or the processing of materials or foodstuffs. . . ."

'tangible personal property' includes any tangible property except land, and improvements thereto, such as buildings or other inherently permanent structures thereon (including items which are structural components of such buildings or structures) . . . ." "Buildings and structural components thereof are not eligible for the credit . . . The term 'structural components' of a building includes such parts of the building as central air-conditioning and heating systems, plumbing, and electric wiring and lighting fixtures, relating to the operation and maintenance of the building."

(Technical explanation of the Bill at U.S.Code Cong. & Admin.News, 1962, p. 3470).

Our review of the Revenue Act of 1962, its legislative history, and the Treasury Regulations enacted thereunder leads us to the conclusion that the decision in *Minot* in favor of the taxpayer is a correct interpretation of congressional intent in this area, and that the permanency test applied in that case is an accurate characterization of the approach envisioned by Congress and the Treasury Regulations themselves.

■ Initially, we note that it is the express intent of Congress that all tangible personal property qualify for the investment tax credit, and that "[t]angible personal property is not intended to be defined narrowly . . ., nor to necessarily follow the rules of state laws." Further, it is well settled that in interpreting Acts of Congress the "words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." Malat v. Ridell, 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966). It is clear to us that movable partitions, such as the ones in this case, are in their ordinary and everyday sense meaning personal property, and in no sense are they a structural component of

a building in the ordinary and everyday sense of that word: They are neither an integral part of the structure itself, such as a floor or wall, nor do they bear a load as do walls, beams, and girders.

The Treasury Regulations define tangible personal property to include "any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures)." The term structural components is defined to include "such parts *of a building* as walls, partitions, floors, and ceilings, *as well as* any permanent coverings therefor, such as paneling or tiling; windows and doors; all components . . . of a central air conditioning or heating system, including motors, compressors, pipes and ducts; plumbing and plumbing fixtures, such as sinks and bathtubs [etc.] . . ." (emphasis added)

■ We think a close analysis of the legislative history and the Regulations supports our decision that the criteria by which to classify property such as that here is permanency. The Regulation in defining structural components refers to parts *of a building* and then lists as examples a series of items which are integrated with the building during the construction phase. Further, the phrase in the Regulation "as well as" (referring to permanent coverings therefor) is defined to mean a "correlative construction used to indicate the *equality* or *sameness* of two things" (emphasis added).[5] That is, the "parts of a building" which are referred to are permanent parts of the building as are the items following "permanent coverings therefor". Also, in the Technical Explanation of the Bill, the parts of a building which are listed as structural components are all permanent in the sense that they are incorporated in the building during construction, e. g., central air-conditioning and heating systems, and plumbing.

5. *Webster's New World Dictionary*, the World Publishing Company, 2d Edition (1972).

We find further support for this approach, as did the Court in *Minot,* in several Revenue Rulings issued by the Commissioner. In one instance, a bank's vault doors, record vault doors, night depository facilities, and walk-up and drive-up teller's windows were held not to be structural components of the bank building, even though attached to the structure,[6] and in another instance, wall-to-wall carpeting installed in a motel in a manner similar to that used to install the movable partition system in question here was held to qualify for the investment credit since it was "not an integral part of the floor itself, and therefore, [was] not a permanent covering for the floor . . . ."[7] Surely a movable partition system such as taxpayer's is less permanent than a bank vault door and no more permanent than wall-to-wall carpeting.

The functional use approach, as suggested by taxpayer, appears to be the appropriate test for use in determining whether certain property which admittedly would not qualify for the investment credit nevertheless is entitled to such credit if it fits into one of the exceptions set forth in the Regulations, e.

g., the "closely related" exception in 26 CFR § 1.48–1(e)(1)(ii), or the "sole justification exception" in 26 CFR § 1.-48–1(e)(2).

■ We think that it was the intent of Congress to extend the investment tax credit to as broad a segment of American industry as possible, and to exclude from the benefits of such credit only those portions of a building (structural components) which are permanent in the sense that they cannot be removed or relocated without doing at least temporary damage to the structure itself.[8]

■ To the extent that Rev.Rul. 69–14, 1969–1 Cum.Bull. 26 includes movable partitions within the definition of structural components of a building, such ruling in our opinion misconstrues the intent of Congress in this area. Accordingly, we find that the movable partition system in issue here is tangible personal property within the meaning of that word as defined in section 48 of the Internal Revenue Code of 1954, and that taxpayer is entitled to the investment tax credit allowed for such property under the Code for the taxable year 1964.

Affirmed.

6. Rev.Rul. 65–79, 1965–1 Cum.Bull. 48.

7. Rev.Rul. 67–3219, 1967–2 Cum.Bull. 48.

8. Note, in 1964 Congress specifically extended the investment tax credit to elevators and escalators, which admittedly could not be removed or relocated without causing substantial damage to the structure. The government argues that enactment of this legislation clearly reflects Congressional intent that movable partitions not qualify for the credit, since the legislative history states in part:

"The proposed regulations issued by the Treasury Department with respect to the term 'structural components' provide an extensive list of the type of items considered to be structural components and therefore not eligible for the investment credit. Among these items are escalators and elevators. *While these regulations are an accurate interpretation of the intention of Congress last year in this respect,* nevertheless your committee believes that it is appropriate to reconsider the treatment of escalators and elevators * * * *." (emphasis added).
(H.Rep.No.749, 88th Cong. 1st Sess. p. 35 (1964)

The government finds support for its position in the portion emphasized since partitions were included in the regulation to which the legislative history refers. The problem with this analysis is that in 1964 no Court had been called upon to decide this issue, nor had the Commissioner issued Rev. Rul. 69–14. Hence, we find little support for the government's position in the 1964 amendment. Further, we do note that the investment tax credit was re-enacted in the Internal Revenue Act of 1971 subsequent to the decision in *Minot* and no steps were taken at that time to overturn that decision.