OSCAR M. FRALEY AND MAGDALINE R. FRALEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fraley v. Commissioner
Docket No. 10808-91
United States Tax Court
T.C. Memo 1993-304; 1993 Tax Ct. Memo LEXIS 311; 66 T.C.M. (CCH) 100; July 14, 1993, Filed *311 Decision will be entered under Rule 155. For petitioners: John R. James. For respondent: Mario J. Fazio. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1987 in the amount of $ 43,164.07. Respondent also determined additions to tax under section 6653(a)(1)(A) in the amount of $ 2,158, under section 6653(a)(1)(B) in the amount of 50 percent of the interest due on $ 43,164.07, and under section 6661(a) in the amount of $ 10,791. All section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: 1. Whether a certain parcel of land was held primarily for sale to customers in the ordinary course of a trade or business or was held for investment, which will determine whether the gain on the sale of that land is taxable as ordinary income or as capital gains. 2. Whether the adjusted basis of that parcel of land is $ 77,273.45, as reported on petitioners' tax return, or $ 37,212, as determined by respondent. 3. Whether petitioners *312 are liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) and for a substantial understatement of income tax under section 6661(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Oscar M. Fraley and Magdaline R. Fraley are husband and wife, and at the time they filed their petition they resided in Fairlawn, Ohio. Mrs. Fraley is a homemaker who is not employed outside of the home. However, she performs secretarial services for her husband's construction business. Petitioner Oscar M. Fraley is a building contractor who operates his business as a sole proprietorship. The term petitioner in the singular will hereinafter refer to petitioner Oscar M. Fraley. Petitioner's entire working life of almost 40 years has been devoted to the construction of single-family homes and remodeling work. He customarily purchases parcels of land, usually lots in a subdivision that has already been developed to the extent of water and sewer lines, roads, and curbs; i.e., the usual improvements to subdivided building lots. Petitioner *313 then builds single-family homes on these building lots. He either builds the house to the home buyer's specifications or builds a house on speculation and later seeks a buyer for that house. At times during the years from 1979 through 1985, petitioner served on the Fairlawn Planning Commission and thus was generally aware of promising areas in the local real estate market. Petitioner has worked consistently as a builder of single-family houses but generally on a relatively small scale. [1] He does not customarily buy large tracts of land, subdivide them, and sell building lots as such. *314 In 1979 petitioner purchased real property located at 2844 Smith Road, Fairlawn, Ohio (hereinafter the Smith Road property). The total purchase price of the Smith Road property was $ 75,100. The Smith Road property contained approximately 1.97 acres. The Smith Road property was zoned R-1 for residential use only. There was an existing house on the property that was occupied by the property owner. After petitioner purchased the Smith Road property, he made substantial improvements to the house and rented it in 1980 and 1981. In December of 1981, petitioner removed the house from the Smith Road property, relocated the house to another parcel of land, and sold the house. [2]
*315 Petitioner then held the Smith Road land from 1981 until its ultimate sale in 1987. Throughout that holding period and to the present time, that land has remained zoned for residential use only. After the house was removed from the Smith Road property, petitioner placed a sign on the land reading "SMITH ROAD WILL BUILD TO SUIT * * * 2.8 ACRES". The sign listed petitioner's telephone number. The 2.8 acres included petitioner's 1.97 acres in the Smith Road property plus an additional .83 acres belonging to John R. James [3] (hereinafter James). A single-family home could have been built on petitioner's 1.97 acres because he had sewer and water lines on the front of his property. James did not have sewer or water service to his parcel of land and could not obtain such service because he had no street access. James asked petitioner to let him run sewer and water lines across petitioner's Smith Road property over to James' parcel, but petitioner declined to do that. Thus, James' parcel of land had little or no development potential. At some point, apparently in late 1981 or early 1982, when the "Will Build to Suit" sign was first erected, petitioner and James had agreed to put *316 their parcels together, to hold them for appreciation, and to sell them as a single tract of land. Petitioner never contemplated building a single-family house on the Smith Road property, but had in mind some type of business or commercial building. He and James put up the "Will Build to Suit" sign in order "to whet the appetite" of the owner of the adjacent commercial property, GenCorp. No improvements were ever made to either James' parcel or petitioner's Smith Road land. Petitioner obtained an appraisal of his Smith Road property, dated May 13, 1981. The appraiser determined that the highest and best use was limited business, which would require a zoning change to B-1, limited business. With such a zoning change, the appraiser valued petitioner's Smith Road property at $ 130,000. About the end of 1986, James received inquiries from the adjacent landowner, GenCorp, about the possible purchase of his small parcel. GenCorp held a large *317 adjacent parcel of land zoned commercial and particularly wanted to acquire James' property in order to square off the GenCorp land, to prevent undesirable development adjacent to its land, and also to "land bank" real estate in the area. James would not sell to GenCorp unless the company purchased both his land and petitioner's Smith Road property. About the time these negotiations commenced in late 1986, petitioner removed the "Will Build to Suit" sign from the property. James and petitioner rejected offer after offer that was made by GenCorp, holding out for the top dollar for their land. The GenCorp negotiator contacted many local real estate brokers to try to determine the fair market value of the two parcels. He received many differing valuation figures. Ultimately, GenCorp purchased both the James' property and petitioner's Smith Road property. Petitioner sold his unimproved Smith Road land to GenCorp on April 15, 1987, for $ 359,220. On their 1987 Federal income tax return, petitioners reported the sale of the Smith Road property on Schedule D as the sale of a capital asset. Petitioners reported a basis of $ 77,273.45 and thus capital gain income in the amount of *318 $ 281,946.55. There is no evidence in the record to explain or substantiate petitioners' $ 77,273.45 basis figure. At trial petitioners contended that, in the course of an audit of their 1981 tax return, respondent had determined an original cost basis of $ 25,000 for the house located on the Smith Road land at the time petitioner acquired the property in 1979. Therefore, petitioners argue that the basis for the land itself would be the original purchase price of $ 75,100 less the $ 25,000 for the house or $ 50,100. See supra note 2. The audit of petitioners' 1981 return resulted in the issuance of a "no change letter" by the Internal Revenue Service (IRS). The record does not establish that the IRS made any determinations as to the basis of the house or as to any other item on the 1981 return. [4]
*319 Respondent utilized the 1978 County Real Estate Taxes and Special Assessments form to determine the basis in the Smith Road property. That County form assigned values to the house and to the land. Using that County tax assessment figure, respondent determined that the basis for the Smith Road land was $ 37,212. ULTIMATE FINDINGS OF FACT 1. At the time of the sale of the Smith Road land in 1987 and for several years prior thereto, petitioner held that land for investment purposes. 2. The portion of the original purchase price of the Smith Road property allocable to the land was $ 37,212, which was the proper basis for the land in 1987. 3. Petitioners were negligent in claiming a basis for that unimproved land that exceeded the original purchase price of both the land and the house originally located thereon. OPINION Character of Sale Proceeds
Petitioner contends that he held the Smith Road land for investment purposes and therefore it was a capital asset, the sale of which resulted in capital gains. Respondent contends that petitioner held that land primarily for sale to customers in the ordinary course of his trade or business and therefore it was not a capital asset, *320 so that the sale thereof resulted in ordinary income. Petitioner bears the burden of proving that the Smith Road land is a capital asset and that respondent's determination is erroneous. Rule 142(a); Guardian Industries Corp. v. Commissioner, 97 T.C. 308, 316 (1991). Section 1221(1) defines the term "capital asset" as property held by the taxpayer (whether or not connected with his trade or business), but expressly excludes, among other items, "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The Supreme Court has noted that the purpose of this provision is to differentiate between the "profits and losses arising from everyday operation of a business" on the one hand * * * and "the realization of appreciation in value accrued over a substantial period of time" on the other. * * *
Malat v. Riddell, 383 U.S. 569, 572 (1966) (citations omitted). In the context of section 1221(1) the word "primarily" means "of first importance" or "principally". Id. at 572. Whether land is held primarily for sale to customers in *321 the ordinary course of a taxpayer's trade or business is purely a factual determination. Case v. United States, 633 F.2d 1240, 1245 (6th Cir. 1980); Gartrell v. United States, 619 F.2d 1150, 1152-1153 (6th Cir. 1980); Philhall Corp. v. United States, 546 F.2d 210, 214 (6th Cir. 1976); Maddux Construction Co. v. Commissioner, 54 T.C. 1278, 1284 (1970). This and other courts have developed various factors to consider in making this factual determination. Case v. United States, supra; Maddox Construction Co. v. Commissioner, supra.The factors enumerated by the Court of Appeals for the Sixth Circuit, to which any appeal in this case would lie, include: (1) the purpose for which the property was acquired; (2) the purpose for which the property was held; (3) the extent of improvements made to the property; (4) the frequency of sales; (5) the nature and substantiality of the transactions; (6) the nature and extent of the taxpayer's dealings in similar property; (7) the extent of advertising to *322 promote sales; and (8) whether or not the property was listed for sale either directly or through brokers. Mathews v. Commissioner, 315 F.2d 101, 107 (6th Cir. 1963), affg. T.C. Memo. 1961-213. However, as the above cases demonstrate, no one factor or test is determinative, and these factors are not to be applied mechanically. Philhall Corp. v. United States, 546 F.2d at 215. These factors assist the Court in determining the intent of the taxpayer in regard to the particular parcel of land, a purely factual inquiry that depends upon all of the objective facts and circumstances of the particular case and not just the taxpayer's mere statement as to his intent. Philhall Corp. v. United States, supra; Guardian Industries Corp. v. Commissioner, 97 T.C. at 316. The development of the above list of factors and other such lists enumerated in other judicial opinions [5] grew out of the large real estate subdivision cases. There, real estate developers purchased large tracts of raw land, improved the land with utility lines, roads, *323 and curbs, subdivided the land into building lots, and sold those lots to their customers in the ordinary course of their business. However, even such a real estate dealer could hold a particular parcel of land for investment purposes and be entitled to capital gains treatment in regard to that parcel. Case v. United States, 633 F.2d at 1245; Daugherty v. Commissioner, 78 T.C. 623, 632 (1982); Pritchett v. Commissioner, 63 T.C. 149, 163-164 (1974). Also, even if a parcel of land was originally acquired for the purpose of selling it to customers, that purpose is not conclusive; the purpose could change before the sale occurred, and it is the purpose for which the land is held at the time of sale that is determinative. Jersey Land & Development Corp. v. United States, 539 F.2d 311, 315 (3d Cir. 1976); Cottle v. Commissioner, 89 T.C. 467, 487 (1987); Daugherty v. Commissioner, 78 T.C. at 629; Buono v. Commissioner, 74 T.C. 187, 201 (1980); Maddux Construction Co. v. Commissioner, 54 T.C. at 1286. *324 Here, there is no dispute that petitioner acquires land (usually already developed building lots), builds houses on the lots, and sells the lots and houses to his customers. He properly reports the gain from his residential building construction business on his Schedule C as ordinary income. However, the Smith Road property does not fall into that pattern. The original purpose of the acquisition of the Smith Road property is not wholly clear. Petitioner spent a substantial *325 amount of money improving the house on that property, rented the house for 2 years, and then removed the house from the land and sold the improved house. While the house transaction may have been just a variation on petitioner's usual residential building construction business, his treatment of the retained Smith Road land was not. He held that land from late 1981, when the house was relocated and sold, until 1987, when the land itself was sold. During that holding period, he made no improvements to the land. While the land was zoned for residential use only and a house could have been built on it since sewer and water services were available, petitioner had no plans to build a house on it. Furthermore, after the original house was removed from the Smith Road land, petitioner placed a "Will Build to Suit" sign on the property, listing his telephone number, and 2.8 acres which included his 1.97 acres plus James' small parcel of .83 acres. He and James had agreed to unitize their parcels as a single tract and to hold the land for appreciation. They did that for the next several years. Petitioner obtained an appraisal of his Smith Road land in 1981 which indicated that its highest *326 and best use was light business and that, with a zoning change to light business (B-1), the land had a fair market value of $ 130,000. Petitioner took no steps to have the zoning changed from R-1 to B-1. Petitioner took no action in regard to that tract of land except to erect the "Will Build to Suit" sign. He erected that sign "to whet the appetite" of the adjacent owner of a commercial property, GenCorp. That sign was taken down as soon as negotiations began with GenCorp in late 1986. Finally, in 1987, petitioner sold his land to GenCorp for $ 359,220. That price represented a substantial appreciation in the value of the land which was still zoned for residential use only. Also petitioner and James carried out their long-term plan to hold their parcels as a single unit. GenCorp initially wanted to acquire only James' small parcel, but he would not negotiate with the corporation unless it purchased both his parcel and petitioner's larger parcel. James and petitioner rejected several offers from GenCorp and held out for the top dollar. Based on all of the objective facts and circumstances of this case as well as petitioner's testimony as to his subjective intent, the Court *327 concludes that, from late 1981 or early 1982 until the sale in 1987, petitioner held the Smith Road land for investment purposes. Accordingly, that land was a capital asset, and petitioner properly reported the gain on the sale thereof as capital gain. However, petitioner has not established that the basis for the land reported on the Schedule D or the basis for the land claimed during the trial was correct. At trial, petitioner's attorney conceded that the basis claimed when the Smith Road land was sold to GenCorp was erroneous. He asserted that the correct basis of the land is $ 50,100 ($ 75,100 original acquisition price of both the land and the house minus $ 25,000 basis of the house). However, the only evidence given to support these figures is the hand-written notes Mrs. Fraley compiled in connection with the audit of their 1981 return. Mrs. Fraley did not appear or testify at the trial. The Court cannot find that the IRS, in the course of the audit of petitioners' 1981 return, made any determination as to the basis of either the house originally located on the Smith Road property or of the land itself. Moreover, even if the IRS had made such a determination, it would *328 not avail petitioners in this proceeding. Petitioners cannot rely upon any type of estoppel against the Government since they did not rely on any figures either reported on the 1981 return or any figures developed in the course of that audit. See supra notes 2, 4. The record fails to establish the source of the $ 77,273.45 figure claimed on Schedule D of the 1987 return as the basis for the Smith Road land. We note that this figure exceeds the original acquisition price of $ 75,100 for both the house and the land. Since the record shows that there were no improvements to the land itself, its basis could not exceed its allocable portion of the original acquisition price. Respondent relied upon the 1978 County Real Estate Taxes and Special Assessments form to determine the cost basis of the Smith Road land. The County assessment assigned values to both the land and the house thereon, and respondent used that approach to allocate $ 37,212 of the original acquisition price to the land. That is an acceptable method to determine basis. 2554-58 Creston Corp. v. Commissioner, 40 T.C. 932, 940 n.5 (1963). In the absence of any other evidence, the *329 Court concludes that respondent's method of basis determination was reasonable and that the proper basis figure is $ 37,212. Additions to Tax
Respondent has determined that petitioners are liable for an addition to tax for negligence under section 6653(a)(1)(A) and (B) and an addition to tax for a substantial understatement of income tax under section 6661(a). Section 6653(a)(1) provides that, if any part of an underpayment of income tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of (A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). *330 Respondent also has determined an addition to tax under section 6661. Section 6661(a) imposes an addition to tax for a substantial understatement of income tax. The understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). Since we have found that the Smith Road land was a capital asset and that the gain from the sale thereof was properly reported by petitioners as capital gain, there is no basis for either the negligence addition or the addition for understatement of income tax as to this item. However, petitioners were negligent in claiming a basis in the Smith Road land that exceeded the original purchase price of both the land and the house thereon. A taxpayer has a duty to file complete and accurate tax returns and generally cannot avoid this duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Although petitioners relied upon their accountant to prepare their tax returns, petitioners nevertheless *331 had a duty to review and question the preparation of their return prior to signing and filing it. Metra Chem Corp. v. Commissioner, supra at 662; Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), affd. 651 F.2d 1233 (6th Cir. 1981). The items and amounts claimed on the Schedule D involved purely factual matters. The facts were peculiarly within the personal knowledge of petitioners themselves and did not require the legal advice of a tax professional. This error is an egregious one of the type that petitioner Oscar M. Fraley, as an experienced residential building contractor, should have been aware. He knew, or should have known, that the original purchase price had to be allocated between the land and the building on that land. He knew, or should have known, that the basis for the unimproved land could not exceed the original purchase price for both the land and the house thereon. [6] Accordingly, the Court is satisfied that, notwithstanding the fact that their accountant prepared their return, petitioners were negligent in claiming a cost basis for the land that exceeded the total *332 cost of both the land and the house. *333 Computation of petitioners' understatement of tax under Rule 155 will determine whether there is a substantial understatement and, hence, whether the addition to tax under section 6661 applies. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. The parties have stipulated to various purchases and sales of properties by petitioner in the period from 1977 through 1987. For example, in 1977, he sold seven lots on which he had built houses, and, in 1987, he made two such sales. Petitioner had purchased five lots in the Parkway Allotment development in Fairlawn in 1983. He built houses on two of the lots and sold them in 1987. He built houses on two others and sold them another year. At the time of the trial, petitioner still owned one of the five Parkway Allotment lots, had built a house on it, and was still looking for a buyer.↩
2. The record is unclear as to whether petitioner owned the parcel of land to which the house was relocated and whether he sold both the house and the parcel of land or just the house. This 1981 transaction is irrelevant to the issues before the Court, except for the fact that petitioner attempts to rely upon the audit of his 1981 return to establish the original cost basis of the house on the Smith Road property and hence to deduct that from the original total purchase price to ascertain the original cost basis of the Smith Road land.↩
3. This is the same John R. James who is petitioners' counsel in this case.↩
4. There are in the record copies of some figures that Mrs. Fraley compiled and submitted to the IRS auditor in connection with the audit of the 1981 return. There is no evidence in the record to explain or support any of these figures. Petitioners claimed a basis of over $ 100,000 for the Smith Road house when that house was relocated and sold in 1981. Mrs. Fraley's compilation showed $ 25,000 as the portion of the original purchase price allocable to the house, plus improvements to the house of over $ 75,000.↩
5. See, e.g., Suburban Realty Co. v. United States, 615 F.2d 171 (5th Cir. 1980); Jersey Land and Development Corp. v. United States, 539 F.2d 311 (3d Cir. 1976); Biedenharn Realty Co. v. United States, 526 F.2d 409 (5th Cir. 1976); United States v. Winthrop, 417 F.2d 905 (5th Cir. 1969); Pool v. Commissioner, 251 F.2d 233 (9th Cir. 1957), affg. T.C. Memo. 1956-64↩.
6. The 1981 depreciation schedule for the rental house on the Smith Road property listed the cost basis of the house for depreciation purposes as the full $ 75,100 original purchase price. Petitioner knew or should have known that land cannot be depreciated. Moreover, the figures Mrs. Fraley compiled for the IRS auditor in connection with the audit of that 1981 return showed that she regarded only $ 25,000 of the original purchase price as the original basis for the house; the additional $ 75,000 plus for improvements to that house made up the rest of the $ 100,000 plus basis claimed upon the sale of the house. Petitioner as a businessman in the real estate field must be held to at least the same knowledge as Mrs. Fraley who was a homemaker and merely performed some secretarial services for her husband's business. Thus, the Court is satisfied that both petitioners knew or should have known that the basis for the land was less than the original acquisition price for both the land and the house.↩