ROBERT P. WALSH AND DIANE F. WALSH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walsh v. Commissioner
Docket No. 3396-92
United States Tax Court
T.C. Memo 1994-293; 1994 Tax Ct. Memo LEXIS 296; 67 T.C.M. (CCH) 3134; June 27, 1994, Filed *296 Decision will be entered under Rule 155. For petitioners: George R. Serdar. For respondent: David L. Zoss and Thomas E. Ritter. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined a Federal income tax deficiency for petitioners' 1986 taxable year in the amount of $ 120,348.75. After concessions, the issue remaining for our consideration is whether petitioners are entitled to capital gain or ordinary income treatment on gain realized from the sale of a parcel of land. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Shoreview, Minnesota, at the time they filed the petition in this case. Robert P. Walsh (hereinafter referred to as petitioner) began his career in residential real estate sales in 1961. He obtained his real estate broker's license in 1966, and in 1969 he joined a small real estate brokerage company owned by his father, H. E. Walsh. In 1966, petitioners started Walsh Homes, a company that they operated as a sole proprietorship. Petitioners reported Walsh Homes *297 activity on their Schedule C attached to their joint Federal income tax returns. Also in the mid 1960s, petitioner began building homes on lots owned by his father, by hiring and supervising subcontractors. In the early 1970s, petitioner purchased his first parcel of land in Shoreview, Minnesota. Shortly after developing that parcel, petitioner became aware that a 35-acre parcel of land, adjacent to property owned by his father, was available for purchase. The property was also located in Shoreview, Minnesota, on Highways 96 (part of the southern boundary of the property) and 49 (part of the eastern boundary of the property). Petitioner purchased this property in 1973. At the time petitioner purchased the parcel of land, a shopping center was on Highway 49, next to the northeast portion of the property, and south and west of the property, along Highway 96, was the Arner Addition, a single-family home development. In 1976, Walsh Homes began developing portions of the 35-acre parcel that were away from the major highways. Walsh Homes developed four separate subdivisions known as Willow Pond, Willow Pond II, Willow Pond III, and Willow Pond IV. The development of the subdivisions *298 extended from 1976 through 1984. To develop Willow Pond, Walsh Homes built the homes on the various lots in the subdivision. Willow Pond was built and completed during 1976-77. For Willow Pond II, Walsh Homes subdivided the parcel, but only built some of the houses. The remaining lots were sold to another builder. For Willow Pond III, Walsh Homes subdivided the land and then sold all the lots to another builder. Willow Pond III was sold out about 1983. As of the early 1980s, Walsh Homes had stopped building homes because of rising interest rates and difficulties with subcontractors. Therefore, Willow Pond IV was similarly subdivided and the lots sold to a builder in 1984. Walsh Homes did not implement a comprehensive plan for development of the 13 acres of the parcel which bordered the major highways. Petitioner posted a "For Sale or Lease" sign on the 13 acres from approximately 1981 to 1986, and he placed 6 or 8 advertisements in the St. Paul Sunday paper from 1978 through 1986 for the sale of the property. Petitioner maintained the entire parcel of property, including the 13 acres, in the inventory of Walsh Homes from the time of purchase until 1986. Costs associated *299 with the development of Willow Pond IV were capitalized as additions to the basis of the 13 acres in petitioner's inventory records. The zoning of the 13 acres was open. In 1982, petitioner entered into a contract for deed with a prospective purchaser to sell the 13 acres. The contract was cancelled because the purchaser could not obtain financing. In October of 1986, petitioner was approached by Keith Harstad (Harstad), a well-known real estate developer, for the purchase of the 13 acres that bordered the major highways. The offer was a surprise and completely unsolicited. On December 31, 1986, Harstad purchased the 13 acres owned by petitioner and the adjoining property, owned by petitioner's father, for $ 1,000,000. The gross amount payable to petitioner was $ 666,666. The net amount received by petitioner at closing was $ 521,177.13. Petitioners reported the gain on the sale of the 13 acres as capital gain. OPINION The sole issue before us is whether the 13 acres of property sold by petitioner in 1986 was property held primarily for sale to customers or a capital asset. Section 1221[1] defines the term "capital asset" as: property held by the taxpayer (whether or *300 not connected with his trade or business), but does not include -- (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;
The Supreme Court, in interpreting this provision, has said that "primarily" means "of first importance" or "principally". Malat v. Riddell, 383 U.S. 569, 572 (1966). It is well established that a dealer in land still has the right to acquire land and hold it for investment purposes. Pritchett v. Commissioner, 63 T.C. 149, 163 (1974) (citing Maddux Constr. Co. v. Commissioner, 54 T.C. 1278 (1970)). *301 The question of whether property is held primarily for sale to customers in the ordinary course of the taxpayer's trade or business is purely factual. Maddux Constr. Co. v. Commissioner, 54 T.C. 1278, 1284 (1970). Petitioner bears the burden of proof. Rule 142(a). In Maddux Constr. Co. v. Commissioner, supra, we noted: Several factors have been enumerated by the courts for the determination of the question, some of which are: (1) The purpose for which the property was initially acquired; (2) the purpose for which the property was substantially held; (3) the extent to which improvements, if any, were made to the property by the taxpayer; (4) the frequency, number, and continuity of sales; (5) the extent and nature of the transactions involved; (6) the ordinary business of the taxpayer; (7) the extent of advertising, promotion, or other active efforts used in soliciting buyers for the sale of the property; (8) the listing of property with brokers; and (9) the purpose for which the property was held at the time of sale. * * * [Id. at 1284.]
None of the factors is conclusive *302 standing alone, but, rather, all of the factors should be considered as a whole. Id.
Viewing the record before us, we find that the gain on the sale of the property was ordinary income. It is clear from the record that petitioner was in the trade or business of selling real estate. Petitioner was continuously and regularly involved in real estate activities with the primary purpose of earning income or profit. Although we acknowledge that petitioner can hold real estate for investment purposes, petitioners have not met their burden of proving that this property was not held primarily for sale to customers in their trade or business. The only contemporaneous records we have from the time petitioner purchased the entire parcel through the sale of the 13 acres are petitioner's own inventory records. Petitioner listed the entire parcel of property in the records without any distinction or separation of the property they now claim was investment property. It was all included in Walsh Homes' inventory and treated the same. Petitioner even capitalized development costs as additions to the basis of the alleged investment property, further evidence that the entire parcel was deemed *303 to be all part of petitioner's inventory. Petitioners argue that the property was commercial property and because petitioner did not develop commercial property, the parcel was not part of his trade or business. Therefore, petitioners argue, it must have been investment property. We do not find any meaningful distinction in this argument. By the time the 13 acres were sold, petitioner was no longer building homes, he was only buying, subdividing, and selling real property. Petitioner did not make any improvements on the 13 acres, but that does not mean that it was not his intention or within his ability to do so. We further note, even though petitioners argue that, because of the highway, the property was only suitable for commercial use, immediately to the west of the 13 acres, along Highway 96, was a residential development. The development was there when petitioner purchased the property, and petitioner also could have built single family homes. Therefore, the property was not only suitable for commercial use. Petitioners also argue that petitioner held the property for a long period of time and did not sell the 13 acres of land in smaller lots, even though offers were *304 made. The length of time a taxpayer holds the property is probative evidence as to whether the property is investment property. See Little v. Commissioner, T.C. Memo. 1993-281. However, in this case we do not find that factor to be decisive. Petitioner held the property for 13 years, which would be helpful in isolation. However, it had been only 2 years since petitioner had sold the last subdivided lots from Willow Pond IV. Petitioner held that property for 11 years, and it was clearly held for sale to customers in the ordinary course of his real estate business. Petitioner, by his own business practices, held other such property for long periods of time. Petitioner held the entire parcel for 3 years before he subdivided and developed Willow Pond. Two years since the last sale of lots from the same parcel of land is not significant on these facts. Petitioners' final emphasis is on the facts that petitioner did not have a comprehensive plan to subdivide the property and his minimal efforts to sell the property. We find these facts to be neutral. As we said before, it had only been 2 years since petitioner had sold Willow Pond IV. In such *305 a relatively short amount of time we do not find it significant that petitioner had not made a comprehensive plan. Petitioner's own pattern was to wait between projects. His minimal sales efforts similarly are not helpful. Petitioner was concentrating his efforts on the other subdivided lots. We can only assume that petitioner did not advertise the sale of Willow Pond IV while he was selling Willow Pond III. Petitioners were credible witnesses, but their testimony could not overcome the written contemporaneous records. Petitioners were in the trade or business of selling real estate, and the property was included in their inventory records which belies an intention to hold it for investment. Cf. Pritchett v. Commissioner, 63 T.C. 149 (1974). The property could have been developed for residential use and, based on the record before us, we cannot find that it was not petitioners' primary purpose to hold the property for sale to customers in the ordinary course of their trade or business. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩