**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-6

UNITED STATES TAX COURT

PHILLIP SCOT SUTTON AND LISA MARIE SUTTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14369-11S.                    Filed February 6, 2013.

Phillip Scot Sutton, pro se.

<u>Craig A. Ashford</u>, for respondent.

SUMMARY OPINION

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

---

[1]  Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year in issue.  All Rule references are to the Tax

(continued...)

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Respondent determined a deficiency of $5,443 and a section 6662(a) accuracy-related penalty of $1,089 in petitioners' Federal income tax for 2008. After concessions,[2] the sole issue for decision is whether petitioners are entitled to a capital or ordinary loss deduction on the abandonment of an option to purchase real property.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in California. Lisa Marie Sutton is a party to this proceeding only by virtue of having filed a joint return with her husband.

---

[1](...continued)
Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

[2] Respondent concedes that petitioners are entitled to deduct on Schedule C, Profit or Loss From Business, travel expenses of $3,104, car and truck expenses of $8,888, and "other" expenses (apart from the loss at issue) of $1,353 for 2008. Respondent also concedes the accuracy-related penalty. The other adjustments in the notice of deficiency are computational.

In 1997 Phillip Scot Sutton (petitioner) received a master's degree in business administration with a concentration in finance and real estate. In 2003 he accepted employment as the general manager of the Jon Gibson Co. (Gibson), a real estate developer in California. His duties included purchasing and developing real property for Gibson and managing real property that had already been developed by Gibson. He was compensated as an employee whose wages were reported on Form W-2, Wage and Tax Statement.

In 2005 petitioner formed Sutton Enterprises, LLC (Sutton LLC), with the intent to purchase and develop real property part time for his own account. That same year he purchased a dilapidated property which he intended to fix up and flip for a profit. He continued to work for Gibson but began receiving compensation in two separate capacities. He was compensated as an employee for managing Gibson's existing properties and as an independent contractor through Sutton LLC for purchasing and developing new properties for Gibson. Gibson provided him with a Form W-2 for work he performed as an employee and a Form 1099-MISC, Miscellaneous Income, for work he performed as an independent contractor.

In 2006 petitioner purchased five additional properties for his own account. Two of the properties were dilapidated properties similar to the property he had purchased in 2005. The other three properties were purchased as rentals or as

investments. Petitioner improved the dilapidated properties and listed them for sale with several real estate firms but was unable to find any buyers on account of the economic downturn.

In early 2007 petitioner received a California real estate license. On February 16, 2007, he entered into a "Residential Purchase Agreement" (option)[3] to purchase real property in El Dorado Hills, California (El Dorado Hills property), for $3.35 million.[4] The option contract, as amended on May 14, 2007, provided that petitioner would make an initial deposit of $30,000 into an escrow account on or before May 21, 2007, and make additional monthly deposits of $3,000 beginning on September 1, 2007, until the escrow closed.[5] It further provided that "the period of time between 5/21/07 and close of escrow is given to the Buyer in order to develop the property for its highest and best use as determined by Buyer."

---

[3] The parties stipulated that the option is an option to purchase real property.

[4] The El Dorado Hills property is also referred to as the Bass Lake Property in the record.

[5] The deposits were not refundable, but they would be applied toward the purchase price if the escrow closed.

Petitioner spent approximately 20 hours per week working on the El Dorado Hills property. The work included searching for partners and investors and vetting, investigating, and developing the property. However, on account of the economic downturn, he was unsuccessful in his efforts. On March 18, 2008, he signed a "Release of Contract" abandoning the option and forfeiting $48,000 in deposits that he had made in 2007 and 2008. On June 30, 2008, he ended his employment with Gibson. The following year he closed Sutton LLC.

On October 17, 2009, petitioners filed their Form 1040, U.S. Individual Income Tax Return, for 2008. On Schedule C, petitioner reported his principal business or profession as "real estate investment and development", and he reported gross income of $85,625 and expenses of $40,146. Among the expenses he reported was a loss of $16,000 on the abandonment of the option. Respondent concedes that petitioner provided sufficient documentation at Appeals to establish that he sustained a loss of $48,000. On May 26, 2011, respondent mailed petitioners a notice of deficiency for 2008 in which he determined that the loss was a capital loss which should have been reported on Schedule D, Capital Gains and Losses, instead of Schedule C. We must determine whether the loss is a capital loss as respondent contends or an ordinary loss as petitioner contends.

### Discussion

I.      Burden of Proof

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner has neither claimed nor established that he satisfies the requirements of section 7491(a) to shift the burden of proof to respondent with regard to any factual issue. Accordingly, the burden of proof is on petitioner to show that respondent's determinations set forth in the notice of deficiency are incorrect. See id.

II.     Capital or Ordinary Loss on the Abandonment of the Option

A.      General Rules

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 165 generally allows a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. However, section 165(f) provides that a loss from the sale or exchange of a capital

asset is allowed only to the extent allowed under sections 1211 and 1212.[6] Section

1221 defines a capital asset as any property held by the taxpayer, whether or not

connected with his or her trade or business. Section 1221(a)(1) creates an exception

to the definition of a capital asset for "stock in trade of the taxpayer or other

property of a kind which would properly be included in the inventory of the

taxpayer if on hand at the close of the taxable year, or property held by the taxpayer

primarily for sale to customers in the ordinary course of his trade or business".

Section 1234(a)(1) provides as a general rule:

Gain or loss attributable to the sale or exchange of, or loss attributable
to failure to exercise, an option to buy or sell property shall be
considered gain or loss from the sale or exchange of property which
has the same character as the property to which the option relates has
in the hands of the taxpayer (or would have in the hands of the
taxpayer if acquired by him).

Therefore, the character of petitioner's loss on the abandonment of the option is

the same as the character the El Dorado Hills property, the underlying property to

which the option relates, would have had in his hands.

---

[6] Sec. 1211(b) limits the allowance of such losses to the extent of gains from such sales or exchanges, plus the lower of (1) $3,000 ($1,500 in the case of a married individual filing a separate return), or (2) the excess of such losses over such gains.

B.      The Parties' Arguments

Respondent contends that the El Dorado Hills property would have been a capital asset in petitioner's hands.  He further contends that petitioner purchased the option as an investment and that "neither Sutton LLC, nor Mr. Sutton ever held real property for sale to customers in the ordinary course of their trade or business."  Respondent does not dispute that petitioner was in a trade or business; instead, he takes the position that petitioner was "only in the trade or business of locating, developing, and selling real property for third parties, including Gibson."

Petitioner contends that he did not purchase the El Dorado Hills property with the hope that it would appreciate over time like an investment.  Instead, he purchased the property with the intent "to create value by actively improving it and selling to multiple buyers/builders for profit and income".  He further contends that during the year in issue he was in the trade or business of, among other things, "[i]mproving dilapidated properties for sale and profit (flipping)" and "developing raw land with the intent to actively work to improve value and sell at a profit."  We interpret petitioner's argument, as did respondent, to be that the El Dorado Hills property would have been an ordinary asset in his hands--excluded from the definition of a capital asset under section 1221(a)(1) as property that would have

been held primarily for sale to customers in the ordinary course of his trade or business.

### C. The El Dorado Hills Property: Capital or Ordinary Asset

We must determine whether the El Dorado Hills property would have been a capital asset or an ordinary asset in petitioner's hands. That question turns on a purely factual matter--whether the property would have been held primarily for sale to customers in the ordinary course of petitioner's trade or business. See Pritchett v. Commissioner, 63 T.C. 149, 162 (1974); Maddux Constr. Co. v. Commissioner, 54 T.C. 1278, 1284 (1970).

Over the years, courts have considered a variety of factors in determining a taxpayer's primary purpose for holding property, including (1) the taxpayer's purpose in acquiring the property and the duration of his ownership, (2) the purpose for which the property was subsequently held; (3) the taxpayer's everyday business and the relationship of realty income to total income, (4) the frequency, continuity, and substantiality of sales of property, (5) the extent of developing and improving the property to increase sales, (6) the extent to which the taxpayer used advertising, promotion, or other activities to increase sales, (7) the use of a business office for the sale of property, (8) the character and degree of supervision or control the taxpayer exercised over any representative selling the property, and (9) the time and

effort the taxpayer habitually devoted to the sales. <u>United States v. Winthrop</u>, 417 F.2d 905, 910 (5th Cir. 1969); <u>Cottle v. Commissioner</u>, 89 T.C. 467, 487 (1987); <u>Raymond v. Commissioner</u>, T.C. Memo. 2001-96; <u>Neal T. Baker Enters., Inc. v. Commissioner</u>, T.C. Memo. 1998-302; <u>Nadeau v. Commissioner,</u> T.C. Memo. 1996-427; <u>Tollis v. Commissioner</u>, T.C. Memo. 1993-63, <u>aff'd without published opinion</u>, 46 F.3d 1132 (6th Cir. 1995). Although these factors may aid the finder of fact in determining, on the entire record, the taxpayer's primary purpose for holding property, they have no independent significance and individual comment on each factor is not necessary or required. <u>Cottle v. Commissioner</u>, 89 T.C. at 487-489; <u>see also</u> <u>Suburban Realty Co. v. United States</u>, 615 F.2d 171, 177-179 (5th Cir. 1980); <u>Hay v. Commissioner</u>, T.C. Memo. 1992-409.

In 2005 petitioner formed Sutton LLC with the intent to purchase and develop real property part time for his own account. Thereafter, he spent part of his time working for Gibson managing real property as an employee and purchasing and developing real property as an independent contractor and part of his time purchasing and developing real property for his own account. In 2005 and 2006 he

purchased, improved, and listed for sale three dilapidated properties.[7] The following year he purchased the option on the El Dorado Hills property and continued to work for Gibson performing the same duties as in the prior years. We find that petitioner was in the trade or business of purchasing and developing real property for both himself and others. Respondent's contention that petitioner was "only in the trade or business of locating, developing, and selling real property for third parties, including Gibson" is unpersuasive.

Petitioner credibly testified that he purchased the option on the El Dorado Hills property in 2007 with the intent to subdivide and develop the property. He further credibly testified that he spent approximately 20 hours per week working on the property in 2007 and until he abandoned the option on March 18, 2008. He introduced into evidence a copy of the option contract, which corroborates his testimony and specifically provides that he would be allowed the period between May 21, 2007, and the close of escrow "to develop the property for its highest and best use" and that the sellers of the property would "cooperate with * * * [petitioner] in any and all ways necessary and in a timely way to develop the property accordingly."

---

[7] His lack of success in selling the dilapidated properties did not reflect a lack of effort on his part.

Petitioner spent considerable time and effort on the El Dorado Hills property while holding merely an option to purchase it. In the light of the foregoing and on the basis of all the facts and circumstances, we find that petitioner would have held the property primarily for sale to customers in the ordinary course of his trade or business, as opposed to some other purpose such as an investment, had he acquired it. Thus, the property would have been an ordinary asset in his hands, and, accordingly, petitioners are entitled to an ordinary loss deduction of $48,000 for 2008 on the abandonment of the option.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we conclude they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.