T.C. Memo. 2010-261

UNITED STATES TAX COURT

WENDELL V. AND SHARON T. GARRISON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19988-07, 19989-07.    Filed December 1, 2010.

Wendell V. and Sharon T. Garrison, pro sese.

<u>Roger W. Bracken</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and additions to tax under

section 6651(a)(1) for 1998, 1999, and 2000.[1]  After concessions, the issues remaining for decision are:[2]

(1)  Whether petitioners' gains from sales of real property during tax years 1998-2000 were ordinary income or capital gain;

(2)  whether petitioners are liable for self-employment taxes;

(3)  whether petitioners are entitled to deduct additional costs associated with the gross income received from purchasing and selling real property;

(4)  whether petitioners are liable for income tax on dividends received;

(5)  whether petitioners are liable for income tax on interest received in 1998;

(6)  whether petitioners must reduce their itemized deductions for all years and their child tax credit for 1998;

(7)  whether petitioners are liable for a failure to timely file addition to tax pursuant to section 6651(a)(1).
We resolve these issues against petitioners, except we hold that respondent has not carried the burden of proof with respect to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes the gain on the foreclosure sale of one property known as the Dumbarton property.

the increased deficiencies and additions to tax asserted in his amended answer.

FINDINGS OF FACT

Petitioners resided in Maryland when they filed their petitions.  On March 22, 2002, petitioners filed their delinquent joint Federal income tax returns for tax years 1998, 1999, and 2000.

On June 8, 2007, respondent issued a notice of deficiency (notice).  On September 4, 2007, petitioners timely filed their petitions in this Court for tax years 1998, 1999, and 2000.  The notice mailed to petitioners reflects, among other adjustments, a recharacterization of petitioners' real estate transactions. Specifically, respondent classified income from these transactions as ordinary income from a trade or business rather than royalty income, or capital gains as petitioners now claim.[3] Respondent made additional adjustments, some resulting from his recharacterization of the income from real estate sales.  The overall adjustments are as follows:

|  | 1998 | 1999 | 2000 |
| --- | --- | --- | --- |
| Schedule C: Income | $834,000 | $604,500 | $473,000 |
| Capital gain or loss | -0- | 27 | -0- |
| Self-employment tax | 13,240 | 13,789 | 16,439 |
| Self-employment tax deduction | (6,620) | (6,895) | (8,220) |

[3]Petitioners contend that they incorrectly reported proceeds from sales of real estate as royalty income on their returns, and they now argue that the proceeds should be capital gains.

| | | | |
|---|---|---|---|
| Cost of goods sold | (656,315) | (426,000) | (212,000) |
| Dividend income | 38 | 38 | 37 |
| Interest income | 50 | -0- | -0- |
| Schedule E: Royalty income | (63,991) | (47,121) | (73,464) |
| Itemized deductions | (44,328) | (16,656) | 1,478 |
| Exemptions | -0- | -0- | 8,064 |

During tax years 1998 through 2000, petitioners regularly purchased and sold real estate within short periods. Petitioner husband earned not more than $40,000 annually as a mortgage banker, and petitioners' purchases and sales of real estate contributed substantially to their income. Many of the properties petitioners purchased were in foreclosure.

In 1998 petitioners sold eight parcels of real property. Petitioners did not claim expenses or repairs for any of these properties on their 1998 Form 4797, Sales of Business Property. Petitioners sold all those properties within 2 months of purchase, with one exception. In 1999 and 2000 petitioners sold four parcels of real property each year. Petitioners listed expenses and repairs on their 1999 Form 4797. Petitioners sold each property within 10 weeks of acquiring it. Over the 3 years petitioners did not rent any of the properties before selling them.

Trial was held on December 7 and 9, 2009, in Washington, D.C. On March 11, 2009, the Court had granted respondent's motion for leave to amend the answer. Respondent's amended

answer asserted increased deficiencies and section 6651(a)(1) additions to tax as follows:

| Year | Original deficiency | Increased deficiency | Original sec. 6651(a)(1) additions to tax | Increased sec. 6651(a)(1) additions to tax |
|------|------|------|------|------|
| 1998 | $27,118 | $69,298 | $6,779 | $17,324 |
| 1999 | 32,532 | 84,259 | 8,133 | 21,052 |
| 2000 | 65,751 | 109,348 | 16,473 | 35,489 |

Respondent's increased deficiencies and additions to tax are based on property sale proceeds not included in the notice of deficiency. Those proceeds increased petitioners' self-employment taxes and their adjusted gross income. The changes to petitioners' adjusted gross income resulted in increased self-employment tax deductions and reductions in itemized deductions and exemptions.

On his posttrial brief, respondent again revised his position regarding unreported income from petitioners' real estate transactions as follows (the amounts in the notice of deficiency are shown as well):

| Year | Notice of deficiency net real estate income adjustment to self employment income | Revised self-employment income per respondent's brief |
|------|------|------|
| 1998 | $177,685 | $196.138.79 |
| 1999 | 178,729 | 112,505.08 |
| 2000 | 261,000 | 196,607.57 |

At trial petitioners submitted Forms 1040X, Amended U.S. Individual Income Tax Return, for these years.  Petitioners also entered into the record Forms 4797 which listed the costs of repairs and expenses for real estate.  Both sets of documents were admitted to help the Court understand petitioner husband's testimony.  However, petitioners produced no receipts, invoices, or any other evidence to substantiate the expenses petitioners claim they paid on their real estate ventures.  Respondent submitted deeds and Forms HUD-1, Settlement Statement, for the properties petitioners purchased and sold during the years at issue and used these documents to calculate the gains by subtracting from sale proceeds the purchase and settlement costs.

OPINION

I.  Burden of Proof

The taxpayer bears the burden of proving by a preponderance of the evidence that the Commissioner's determinations in the notice of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deductions.  Rule 142(a)(1); INDOPCO, v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  In general, the burden of proof with regard to factual matters rests with the taxpayer.  Under section 7491(a), if the taxpayer produces credible evidence

with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax and meets other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue.  Petitioners have not alleged that section 7491(a) applies or established their compliance with its requirements.

Section 6214(a) grants the Court jurisdiction to redetermine a deficiency and to determine whether any additional amounts or any additions to tax should be assessed.  Respondent may assert an increased amount under section 6214(a); however, with respect to the increased deficiencies and section 6651(a)(1) additions to tax, respondent bears the burden of proof.  After briefing, the increased deficiency respondent seeks is for 1998.  Petitioners bear the burden of proof with respect to the deficiencies and additions to tax determined in the deficiency notice.  See Rule 142(a).

II.  Issues

A.  Capital Gain or Ordinary Income

The first issue is whether petitioners are entitled to capital gains treatment for proceeds of their property sales.[4] Respondent argues that the real estate petitioners purchased and sold was held primarily for sale to customers in the ordinary

---

[4]Although petitioners claimed royalty income on their returns, they now claim the income should be treated as capital gains.

course of petitioners' trade or business of real estate refurbishment and not for investment.  If petitioners held the property primarily for sale to customers in the ordinary course of business, as respondent argues, petitioners' gains will be treated as ordinary income.

1.  Section 1221

Petitioners assert they purchased real estate for the purpose of holding it for investment and with the intent of renting it.  Respondent argues that petitioners' intent was to resell the property.  A "capital asset" is broadly defined as property held by the taxpayer, whether or not connected with his or her trade or business, subject to a number of exceptions. Sec. 1221(a).  These exceptions include stock in trade or other property of a kind that is properly included in a taxpayer's inventory and property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business.  Id.

The Supreme Court has defined "primarily" as used in this context to mean "principally" or "of first importance".  Malat v. Riddell, 383 U.S. 569, 572 (1966); Biedenharn Realty Co. v. United States, 526 F.2d 409, 422-423 (5th Cir. 1976).  The question of whether property is held primarily for sale to customers in the ordinary course of a taxpayer's business begins with a factual analysis.  Pritchett v. Commissioner, 63 T.C. 149,

162 (1974); Raymond v. Commissioner, T.C. Memo. 2001-96 (citing Cottle v. Commissioner, 89 T.C. 467, 487 (1987)).

Typically, the factors in making this determination include: (1) The taxpayer's purpose in acquiring the property; (2) the purpose for which the property was subsequently held; (3) the taxpayer's everyday business and the relationship of the income from the property to the total income; (4) the frequency, continuity, and substantiality of sales of property; (5) the extent of developing and improving the property to increase the sales revenue; (6) the extent to which the taxpayer used advertising, promotion, or other activities to increase sales; (7) the use of a business office for the sale of property; (8) the character and degree of supervision or control the taxpayer exercised over any representative selling the property; and (9) the time and effort the taxpayer habitually devoted to the sales. Biedenharn Realty Co. v. United States, supra at 415; United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969). The Court of Appeals for the Fifth Circuit elaborated that frequency is especially probative because "the presence of frequent sales ordinarily belies the contention that property is being held 'for investment' rather than 'for sale.'" Suburban Realty Co. v. United States, 615 F.2d 171, 178 (5th Cir. 1980).

2. <u>Analysis</u>

We first examine petitioners' purpose for acquiring and holding the properties. Petitioner husband testified that sales of the acquired properties resulted from a difficult market and a desire for immediate funds. The record demonstrates that petitioners purchased and sold real estate with the purpose of receiving the maximum gain within a short period. None of the alleged investment properties were leased and only one was held for more than 1 year before being sold. These real estate transactions were entered into regularly and resulted in significant gains during the 3 years at issue. We find that the overall purpose of acquiring the properties was to benefit from the immediate financial gains in selling them as quickly as possible.

Although petitioner husband was employed as a mortgage banker during these years, this employment was secondary to the real estate transactions he and his wife pursued. Petitioners' earnings from the real estate transactions constituted their primary source of income.

We also consider the frequency, continuity, and substantiality of petitioners' property sales. See <u>Rice v. Commissioner</u>, T.C. Memo. 2009-142. Petitioners engaged in at least 15 sales over 3 years, and most of the sales occurred within 4 months after they purchased the property.

Petitioner husband testified: "I'm in the business of buying material, fixing houses and reselling them." This undertaking involved procuring insurance before the title transfer in order to accelerate the resale. Petitioners did not hold properties as an investment and did not rely on the services of a real estate agent or another third party to select, promote, or sell their properties.

Petitioners' real estate transactions were conducted in the ordinary course of a trade or business and not for investment purposes. Accordingly, we find that respondent correctly treated petitioners' real estate activities as giving rise to ordinary income derived from a trade or business.

### 3. Self-Employment Tax and Deduction

Section 1401(a) and (b) imposes a tax on the net earnings from self-employment derived from any trade or business carried on by the taxpayer. Sec. 1.1401-1(a), Income Tax Regs. The term "trade or business" has the same meaning under section 1402(a), defining "net earnings from self-employment", as under section 162. Petitioners were engaged in the trade or business of purchasing and selling real property during the years at issue. On the basis of our finding that petitioners earned income in their real estate trade or business, they are subject to tax on their net earnings under section 1401 and to a deduction under section 164(f).

#### 4. Adjustment of the Cost of Goods Sold

Section 6001 requires a taxpayer to keep records or render statements sufficient to establish his gross income, deductions, and credits. Sec. 1.6001-1(a), Income Tax Regs. The income of a sole proprietorship must be included in calculating the income and tax liabilities of the individual owning the business. Sec. 61(a)(2).

Respondent argues that petitioners were in the business of renovating properties. Respondent describes petitioners' regular business activity as finding, purchasing, renovating, and selling foreclosed properties, and respondent allowed expenses for settlement and purchase costs. Petitioner husband explained that the renovation process required procuring insurance, purchasing materials, and hiring additional labor to assist with the repairs and improvements. Notwithstanding the description of these activities, petitioners failed to produce any receipts or other reliable basis for fixing the amounts of repairs or other expenditures incurred during their renovation activities. We therefore find that we cannot approximate allowable amounts for petitioners' reported repairs and expenditures because petitioners provided nothing on which we could rationally base an estimate. However, to the extent respondent seeks additional deficiencies, respondent has not shown that petitioners actually realized net gains from sales of real estate as asserted in his

amended answer, and we do not uphold the increased deficiencies sought for 1998. We note that on brief respondent asserts smaller amounts of gains and self-employment income than in the notice of deficiency for 1999 and 2000.

### B. Miscellaneous Issues

#### 1. Dividend Income

Under section 61(a), gross income means all income from whatever source derived including dividends. Sec. 61(a)(7).

During tax years 1998, 1999, and 2000, petitioners received dividends of $38, $38, and $37, respectively, from their stock in AT&T. Petitioners introduced no evidence to contradict these adjustments, and, accordingly, respondent's determination will be sustained.

#### 2. Interest Income

Under section 61(a)(4), gross income includes interest. For tax year 1998, petitioners reported no interest income. Petitioners introduced no evidence to contradict respondent's determination that they received interest income in 1998. Petitioners have not met their burden, and respondent's determination is sustained.

#### 3. Itemized Deduction

Petitioners claimed various itemized deductions including taxes, mortgage interest, charitable contributions, dependency exemption deductions, and the child tax credit. Respondent

allowed mortgage interest expenses for years 1998-2000 but adjusted petitioners' dependency exemption deductions, itemized deductions, and child tax credit.  Petitioners' entitlement to other itemized deductions for each year was automatically adjusted on the basis of respondent's calculations of their adjusted gross income.  Petitioners failed to produce receipts, expense reports, or other records indicating that they qualified for deductions in excess of the amounts respondent allowed, and petitioners are not entitled to additional deductions.

    C.   Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax equal to 5 percent of the amount required to be shown as tax on the return. An additional 5 percent is imposed for each additional month or fraction thereof during which the failure to file continues, but not to exceed 25 percent in the aggregate.  Id.  Under section 7491(c), the Commissioner must come forward with sufficient evidence to show that an addition to tax is appropriate but need not introduce evidence regarding reasonable cause or similar provisions.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The burden of proof for the amounts included in the notice of deficiency with respect to the additions to tax remains on petitioners.

This addition to tax may be avoided if the failure to file timely was due to reasonable cause and not willful neglect.

United States v. Boyle, 469 U.S. 241, 245-246 (1985). Reasonable cause exists for late filing if the taxpayer exercised ordinary care and prudence but was nevertheless unable to file on time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners filed their 1998, 1999, and 2000 Federal income tax returns in 2002. Petitioner husband acknowledged this error at trial and stated he had no excuse to explain the delayed filing. Petitioners did not show reasonable cause or otherwise indicate that the delay resulted from something other than neglect resulting in a failure to comply with filing requirements. We therefore find petitioners did not have reasonable cause and are liable for the section 6651(a)(1) addition to tax for failure to file timely for each year at issue.

III. Conclusion

Petitioners regularly purchased and sold real estate properties in the ordinary course of their trade or business and are thus liable for the adjustment to their gross income and self-employment taxes. Respondent's assertion of increased deficiencies and additions to tax based on the inclusion of income in 1998 in excess of the amounts determined in the notice of deficiency fails because respondent has not established that the increased sales were not offset by costs petitioners asserted at trial. Thus, to the extent that respondent increased the

amount of income for real property sales during 1998 over the amounts determined in the notice of deficiency, petitioners are not liable for either the increased deficiency or the increased addition to tax.  On brief respondent conceded some amounts of self-employment income from real estate sales for 1999 and 2000, and these concessions as listed in the Findings of Fact are accepted.  Concerning petitioners' request for additional expense deductions in 1998, 1999, and 2000, petitioners have not met their burden to establish that they qualify for additional deductions in excess of those allowed.  Petitioners are liable for the section 6651(a)(1) additions to tax for 1998, 1999, and 2000 resulting from the above analysis.

To reflect the foregoing,

Decisions will be entered

under Rule 155.